The STATE of Ohio, Appellee,

v.

THROWER et al., Appellants.

[Cite as *State v. Thrower* (1989), 62 Ohio App.3d 359.]

Court of Appeals of Ohio,
Summit County.

Nos. 14044, 14045, 14095 and 14096.

Decided Nov. 1, 1989.

*Philip D. Bogdanoff,* assistant prosecuting attorney, for appellee.
*Paul Mancino, Jr.,* for appellants.

HINES, Judge.

The defendants-appellants, Albert Thrower and Thomas Thrower, were indicted on September 12, 1988 in case No. CR 88–09–1300 as follows:

| Count | Revised Code Section | Offense |
|---|---|---|
| 1 | 2925.03(A)(3) | Trafficking in Marihuana |
| 2 | 2925.03(A)(8) | Trafficking in Marihuana |
| 3 and 4 | 2925.03(A)(7) | Trafficking in Marihuana |
| 5 | 2925.03(A)(2) | Trafficking in Marihuana |
| 6 and 7 | 2925.03(A)(6) | Trafficking in Marihuana |
| 8 | 2925.13(B) | Permitting Drug Abuse |

Additionally, Albert was indicted in count nine for having a weapon while under disability, R.C. 2923.13.

Thereafter, on January 6, 1989, Albert and Thomas were indicted in case No. CR 89–01–0026 as follows:

| Count | Revised Code Section | Offense |
|---|---|---|
| 1 | 2925.03(A)(3) | Trafficking in Marihuana |
| 2 | 2923.01(A)(1) or (A)(2) | Conspiracy to commit Trafficking in Marihuana |

| | | |
|---|---|---|
| 3 and 4 | 2923.32(A)(2) and (A)(3) | Engaging in a Pattern of Corrupt Activity |

These cases are consolidated for purposes of appeal.

A negotiated plea arrangement with the state resulted in the dismissal of three charges in the indictment in case No. 89–01–0026: trafficking in marihuana, conspiracy and engaging in a pattern of corrupt activity. The Throwers entered guilty pleas to the remaining counts in both indictments. The Throwers were sentenced on February 22, 1989 and March 3, 1989. At the March 3, 1989 hearing, the Throwers fired their attorneys and moved to withdraw their guilty pleas.

On March 20, 1989, the trial court held an evidentiary hearing upon, and then denied, the Throwers' motions to withdraw their guilty pleas. The Throwers appeal.

### Assignments of Error III and IV [1]

"III. The defendants were denied their constitutional rights as they were convicted under an unconstitutional statute.

"IV. The defendants' constitutional rights were violated when they were convicted under a statute which was unconstitutional as it failed to set forth ascertainable standards of guilt."

The Throwers contend that R.C. 2923.32 is unconstitutional for various reasons including that it violates the *Ex Post Facto* Clause and fails to set forth ascertainable standards of guilt. In response, appellee asserts that the statute is constitutional and, further, that the Throwers have waived the issue of constitutionality of the statute because they failed to timely raise this issue at the trial court level.

"In *Ireland v. Palestine, Braffetsville, N.P. & N.W. Turnpike Co.* (1869), 19 Ohio St. 369, 373, it was stated that no constitutional question is ripe for judicial review 'where the case can be disposed of upon other tenable grounds.' " *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 105, 522 N.E.2d 489, 495. Accordingly, before addressing the constitutional issues, this court will determine whether appellants failed to raise the issue of constitutionality of the statute at the trial court level.

The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have

---

**1.** Since these cases are consolidated, this court has renumbered appellants' Assignments of Error I, II and III in case Nos. 14044 and 14045 to Assignments of Error VI, VII, and VIII.

called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279. Failure to raise at the trial court level the issue of constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue, and therefore need not be heard for the first time on appeal. *Id.* at the syllabus.

Appellee contends that because the Throwers did not challenge the constitutionality of the statute prior to trial in a motion to dismiss, they failed to preserve their constitutionality arguments on appeal.

Crim.R. 12(B) provides in pertinent part:

"(B) *Pretrial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised before trial:

" * * *

"(2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)[.]"

The rule specifically contains two exceptions to the general requirement that all defects in the indictment must be raised by a pretrial motion. One such exception is a challenge that the indictment fails to charge an offense which may be raised at any time during the pendency of the proceeding.

Both Albert and Thomas made *pro se* motions to withdraw their guilty pleas during the pendency of the proceeding. Each motion alleged that the charge under R.C. 2923.32 was not an offense. Moreover, counsel included this same assertion as part of the additional motion to withdraw the guilty pleas.

The defense of failure to charge an offense may be based on the unconstitutionality of a statute. 8 Moore, Federal Practice (1989), Paragraph 12.03[1], at 12–20. Therefore, there has been no waiver of this issue.

The Throwers allege that R.C. 2923.32 is unconstitutional for multiple reasons. All legislative enactments enjoy a presumption of constitutionality. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450. Therefore, this court must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance attacked as unconstitutional. *Id.*

### Ex Post Facto And Retroactive Laws

■ Although the effective date of R.C. 2923.31 was January 1, 1986, the Ohio RICO statute can be applied by the state to prosecute anyone who conducted an enterprise through a pattern of corrupt activity having its inception prior to that date. This is because a pattern of corrupt activity is deemed to exist if at least two acts of corruption take place and at least one of these acts has occurred after the effective date of the statute. R.C. 2923.-31(E). The state charged the Throwers, in count four of the indictment in case No. 89–01–0026, with knowingly using or investing proceeds derived from a pattern of corrupt activity, R.C. 2923.32(A)(3), and acquiring an interest in real property through a pattern of corrupt activity, R.C. 2923.32(A)(2). Furthermore, the indictment alleged that these activities occurred between January 1, 1983 and September 30, 1988. Thus, the state was authorized to establish a pattern of corrupt activity by showing one or more additional acts of corruption. The state charged Albert with two additional acts of corruption which occurred prior to the effective date of the statute. Moreover, the state charged the Throwers with the additional acts of corruption delineated in case No. 88–09–1300, which occurred after the statute was enacted.

The Throwers contend that this action violates the prohibition against *ex post facto* and retroactive legislation. The state contends that the statute does not violate *ex post facto* prohibitions because a conviction cannot be obtained unless it is established that one of the acts of corruption occurred after the effective date of the statute.

*Ex post facto* laws are prohibited by Section 10, Article I, United States Constitution, which provides, in part: "No State shall * * * pass any * * * *ex post facto* law * * *." The United States Supreme Court has defined an *ex post facto* law as follows:

" '1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.' " *Miller v. Florida* (1987), 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351, 359, citing *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650. Accord *Dobbert v. Florida* (1977), 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 355–356, quoting *Beazell v. Ohio* (1925), 269 U.S. 167, 169–170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216, 217–218.

The Ohio Legislature is prohibited from enacting retrospective laws under Section 28, Article II, Constitution, which provides: "The General Assembly shall have no power to pass retroactive laws * * *."

A "retrospective (retroactive) law" is defined as:

" 'Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.' " *Herrick v. Lindley* (1979), 59 Ohio St.2d 22, 25, 13 O.O.3d 13, 14–15, 391 N.E.2d 729, 731–732, citing *Rairden v. Holden* (1864), 15 Ohio St. 207, 210.

■ The pertinent distinction between *ex post facto* and a retroactive law is that *ex post facto* laws include statutes which increase the punishment for a prior criminal act, whereas retroactive laws include statutes " ' * * * which take away or impair vested rights, acquired under existing laws, or which create a new obligation, impose a new duty, or attach a new disability in respect to past transactions or considerations * * *.' " *State, ex rel. Michaels, v. Morse* (1956), 165 Ohio St. 599, 604, 60 O.O. 531, 534, 138 N.E.2d 660, 664. Retroactive laws therefore comprise a larger category than *ex post facto* laws, and include statutes imposing disabilities as well as those imposing punishments. *State, ex rel. Corrigan, v. Barnes* (1982), 3 Ohio App.3d 40, 44, 3 OBR 43, 46, 443 N.E.2d 1034, 1038.

The Ohio RICO statute was based on the Federal RICO[2] statute and statutes passed by other states. R.C. 2923.31 *et seq.* (Am.Sub.H.B. No. 5, 141 Ohio Laws, Part I, 1105.) By definition, a pattern of racketeering activity requires at least two acts of racketeering activity, one which occurred after the effective date of the legislation and the last of which occurred within ten years after the commission of a prior act of racketeering activity. Section 1961(5), Title 18, U.S.Code.

■ The Senate Judiciary Committee, in its report to the Senate on this proposed law, stated:

"One act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against *ex post facto laws*, and bills of attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies of this chapter. S.Rept. 91–617, 91st Cong., 1st Sess. p. 158." *United States v. Campanale* (C.A.9, 1975), 518 F.2d 352, 364.

---

**2.** Sections 1961, 1962 and 1963, Title 18, U.S.Code.

The requirement that at least one illegal act occur after the effective date of the statute prevents the statute from violating the *Ex Post Facto* Clause. *Id.* See, also, *United States v. Brown* (C.A.5, 1977), 555 F.2d 407, 417, and *National Mut. Ins. Co. v. Whitmer* (1982), 70 Ohio St.2d 149, 152, 24 O.O.3d 248, 250, 435 N.E.2d 1121, 1123.

For the purpose of this case, the retroactivity must attach a disability to a past transaction. However, the restriction comes about as a relevant incident to the regulation of a present situation. The prior activity is relevant only when combined with a second activity which occurs after the effective date of the statute. Therefore, the statute is not an *ex post facto* or retroactive law.

### Forfeiture of Property

Section 12, Article I, Ohio Constitution provides:

"No person shall be transported out of the state, for any offense committed within the same; and no conviction shall work corruption of blood, or forfeiture of estate." See, also, Constitution of 1802, Sections 16 and 17, Article VIII.

Additionally, Clause 2, Section 3, Article III, United States Constitution provides:

"The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted."

The Throwers contend that these constitutional provisions prohibit forfeiture of property upon conviction of a felony. Therefore, since R.C. 2923.32 provides for a forfeiture of property upon conviction, they argue, it is constitutionally barred.

Before the passage of the federal RICO statute, other federal statutes authorized *in rem* actions against articles and contraband put to illegal use. Tarlow, RICO: The New Darling of the Prosecutor's Nursery (1980), 49 Fordham L.Rev. 165, 277. In contrast, the federal and Ohio RICO statutes authorize *in personam* forfeitures that automatically attach upon conviction. *Id.*

At early common law, *in personam* forfeitures resulted from conviction for felonies and treason. *Calero–Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 682, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452, 467. A RICO forfeiture requires a finding of personal guilt in a criminal prosecution; it is *in personam* and is imposed as punishment. R.C. 2923.32. Unlike *in personam* forfeiture at common law, however, RICO does not forfeit a

defendant's entire estate, but instead a specific property interest in a criminal enterprise.

Therefore, the scope of a forfeiture interest under RICO is limited to illegally acquired interests or property rights put to an illegal use under R.C. 2923.32. See *United States v. Marubeni Am. Corp.* (C.A.9, 1980), 611 F.2d 763, 766–770; *United States v. Thevis* (N.D.Ga.1979), 474 F.Supp. 134, 142. Thus, there is not a constitutional barrier to the limited forfeiture of property utilized to violate the criminal law. See *United States v. Grande* (C.A.4, 1980), 620 F.2d 1026, 1039.

Additionally, the Throwers assert that the property cannot be taken without due process of law. In order for the sentence to include criminal forfeiture, the defendants must be given notice in the indictment that the state is seeking forfeiture. R.C. 2923.32(B)(4). Criminal forfeiture may be permitted only after a conviction of R.C. 2923.32. Moreover, the court orders forfeiture after the jury determines whether forfeiture is permitted by means of a special verdict describing the extent of the interest or property subject to forfeiture. R.C. 2923.32(B)(4). These provisions provide property owners affected adversely by government action the right of notice and an opportunity to be heard. This satisfies constitutional due process guarantees. Section 16, Article I, Ohio Constitution; Fourteenth Amendment to the United States Constitution.

### Mens Rea

The Throwers contend that since the RICO statute fails to set forth a culpable mental state, the statute is unconstitutional. R.C. 2923.32 provides in pertinent part:

"(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

"(2) No person, through a pattern of corrupt activity or the collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property.

"(3) No person, who knowingly has received any proceeds derived, directly or indirectly, from a pattern of corrupt activity or the collection of any unlawful debt, shall use or invest, directly or indirectly, any part of those proceeds, or any proceeds derived from the use or investment of any of those proceeds, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise."

■ Under R.C. 2923.32(A)(3), a defendant may be convicted when he knowingly uses or invests proceeds derived from a pattern of corrupt activity or collection of an unlawful debt in the acquisition, operation or establishment of any enterprise. "Enterprise" includes " * * * any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C). Therefore, a defendant cannot be convicted under R.C. 2923.32(A)(3) without knowing that the proceeds were derived from a pattern of corrupt activity.

■ R.C. 2923.32(A)(1) prohibits the conduct of or participation in the conduct of the affairs of an enterprise through a pattern of corrupt activity by a person employed by or associated with the enterprise. R.C. 2923.32(A)(2) prohibits the acquisition or maintenance of an interest in or control of an enterprise through a pattern of corrupt activity. Neither of these sections includes a *mens rea* over and above that required by the predicate crimes necessary to establish a pattern of corrupt activity.

■ In this case, the predicate crimes include violations of R.C. 2925.03, trafficking in drugs. Consequently, this court will look at the *mens rea* element found in the statutory definition of the predicate crime to determine the degree of *mens rea* that must be proved to establish a RICO violation. *United States v. Biasucci* (C.A.2, 1986), 786 F.2d 504, 512. R.C. 2925.03 provides that no one will knowingly violate the various specific provisions which would constitute trafficking in drugs. Since the conduct or the acquisition must be accomplished directly through a corrupt activity, the *mens rea* necessary to establish a pattern of corrupt activity is that of the predicate crimes, in this case, knowingly.

### Vagueness

■ The Throwers contend that R.C. 2923.31 and 2923.32 are unconstitutional because they are vague. Specifically, as to challenges to a statute based upon its alleged vagueness, the United States Supreme Court has stated: " ' * * * [I]f this general class of offenses [to which the statute applies] can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction.' " *State v. Dorso,* 4 Ohio St.3d at 61, 4 OBR at 151, 446 N.E.2d at 450, citing *United States v. Harriss* (1954), 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996–997. The standard for determining whether a statute is impermissibly vague or indefinite is whether the statute fails to give a person of

ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. *Id.*

A statute is not necessarily void for vagueness merely because it could have been more precisely worded. *Id.*, citing *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510. Specifically, the Throwers allege that these statutes attempt to criminalize business conduct which does not prohibit anything in particular and, therefore, that the indictment fails to set forth an offense. Moreover, the allegations of an offense occurring in 1979 cannot be used in this case because it is not a valid conviction.

In support of this assignment of error, the Throwers cite *State v. Young* (1980), 62 Ohio St.2d 370, 16 O.O.3d 416, 406 N.E.2d 499. In *Young,* the Ohio Supreme Court found R.C. 2923.04, the former organized crime statute, unconstitutional because it was void for vagueness. Five specific problems with that statute have been mentioned:

"(1) It prohibits doing certain things to facilitate the activities of a criminal syndicate. Because a criminal syndicate often engages in legal activities in addition to its illegal activities, the section prohibits furnishing legal or accounting services to facilitate a syndicate's legal activities. A statute cannot constitutionally punish innocent conduct;

"(2) The section fails to limit its coverage to persons who know that their activities aid a criminal syndicate;

"(3) The term 'facilitate' is too vague;

"(4) The term 'continuing basis' in the definition of 'criminal syndicate' is unconstitutionally vague;

"(5) The imposition of criminal liability on persons who '[c]ommit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of a type in which a criminal syndicate engages on a continuing basis'; was criticized because the offense sought to be prohibited is not defined and because it leaves to the syndicate the creation of the boundaries of the conduct sought to be prohibited." Legislative Service Comm. Analysis, Am. Sub.H.B. No. 5 (141 Ohio Laws 1105) (1985) 5–179, Comment.

As to the first and third problems listed, those terms are not in the current RICO statute. As to the second problem listed, the *mens rea* element has previously been discussed. As to the fourth problem listed, "pattern of corrupt activity" is defined in R.C. 2923.31(E) as:

" * * * two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise,

are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

"At least one of the incidents forming the pattern shall occur on or after the effective date of this section. Unless any incident was an aggravated murder or murder, the last of the incidents forming the pattern shall occur within six years after the commission of any prior incident forming the pattern, excluding any period of imprisonment served by any person engaging in the corrupt activity.

"For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, at least one of the incidents forming the pattern shall constitute a felony under the laws of this state or, if committed in violation of the laws of the United States or of any other state, would constitute a felony under the law of this state if committed in this state."

The United States Supreme Court, in *Sedima, S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, construed the pattern of racketeering activity set forth in the federal RICO statute. In *Sedima*, the court, in footnote 14, stated:

"As many commentators have pointed out, the definition of a 'pattern of racketeering activity' differs from the other provisions in [Section] 1961 in that it states that a pattern 'requires at least two acts of racketeering activity,' [Section] 1961(5) (emphasis added), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S Rep No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that '[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern....' 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also id., at 35193 (statement of Rep. Poff) (RICO 'not aimed at the isolated offender'); House Hearings, at 665. Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or

methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. [Section] 3575(e) [18 USCS [Section] 3575(e) ]. This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 US 770, 789 [43 L Ed 2d 616 629, 95 S Ct 1284 1295] (1975)."

Although there are some differences between the Ohio and federal RICO statutes, the thrust of these Acts is similar. The indictment in this case sets forth the necessary requirements: (1) conduct (2) of an enterprise (3) through a pattern (4) of corrupt activity. Even if one of the predicate acts, the 1979 conviction, is not sufficiently related to constitute a pattern, there are ample other acts delineated in the indictment to constitute a pattern.

R.C. 2923.31 specifically includes definitions not only of "pattern," but "enterprise." Moreover, it includes within a definition of corrupt activity a wide variety of serious criminal acts, among them trafficking in drugs. This section defines those offenses sought to be prohibited which created the boundaries of the conduct, thereby answering the fifth problem noted in *Young.*

Therefore, the statute is sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable for its penalties. Moreover, the indictment sets forth all the necessary elements, if proven, to establish a violation of the RICO statute.

For all of the foregoing reasons, this court finds that R.C. 2923.31 and 2923.32 are constitutional.

Assignments of Error III and IV are not well taken.

### Assignment of Error II

"The defendants were denied due process of law and the effective assistance of counsel as their attorneys were laboring under a conflict of interest due to the fact that they were to receive fees from the forfeited property which agreement was not revealed on the record."

The Throwers contend that their attorneys had a conflict of interest thereby denying them effective assistance of counsel. Specifically, the Throwers state that counsel requested of the court that each be paid $15,000 from the forfeiture proceeds, and that the state did not object to having reasonable attorney fees paid out of the funds generated by the sale of the forfeited properties. They assert that this was part of the negotiated plea of guilty which they were unaware of and which was not made part of the plea agreement stated in the record. Moreover, this action constitutes ineffective assistance of counsel because there was a conflict of interest between representing them and the payment of these fees out of the forfeiture proceeds.

There is no evidence that payment of attorney fees out of the forfeiture proceeds was part of the plea agreement. In fact, the state, in response to the petition for attorney fees, stated that the state would not recommend any amount or agree to any amount. Further, trial counsel later withdrew their request for attorney fees. Thus, the Throwers have failed to affirmatively show that the payment of counsel fees out of the forfeiture proceeds was part of the plea agreement which was stated on the record. Crim.R. 11(F); *State v. Butler* (1974), 44 Ohio App.2d 177, 183, 73 O.O.2d 196, 200, 337 N.E.2d 633, 637.

For the court to grant a new trial upon an ineffective assistance of counsel claim, the Throwers must show that counsel's performance was deficient. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accord *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407. The fact that counsel fees were requested from the forfeited proceeds does not render counsel's representation constitutionally defective. See *Wojtowicz v. United States* (C.A.2, 1977), 550 F.2d 786, 792.

Assignment of Error II is not well taken.

### Assignment of Error VIII

"The defendants were subjected to multiple punishments when they were separately sentenced under both indictments."

When a defendant pleads guilty and then affirmatively raises the issue of allied offenses, the trial court must conduct a hearing to determine whether any of the offenses to which the defendant has pleaded are allied offenses of similar import with a single animus. *State v. Kent* (1980), 68 Ohio App.2d 151, 22 O.O.3d 223, 428 N.E.2d 453; *State v. Sipos* (Nov. 4, 1987), Wayne App.No. 2290, unreported, 1987 WL 19518; *State v. Buell* (Nov. 15, 1984), Summit App. No. 11626, unreported, 1984 WL 4029. An issue is waived on appeal, however, if it is not objected to below. *State v. Morris* (Apr. 27, 1988), Summit App. No. 13366, unreported, 1988 WL 40387. The record indicates that the Throwers did not raise this issue in the court below.

Nonetheless, notice of plain error under Crim.R. 52(B) may be taken if, upon review of the record, the record reveals that such error resulted in a manifest miscarriage of justice. *State v. Adams* (1980), 62 Ohio St.2d 151, 153–154, 16 O.O.3d 169, 170–171, 404 N.E.2d 144, 146. R.C. 2941.25 states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In order for two crimes to constitute allied offenses of similar import under R.C. 2941.25(A), there must be a recognized similarity between the elements of the crime committed, such that the commission of one will result in the commission of the other offense. *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345. Even where a defendant is charged with two or more offenses of the same or similar kind, he may be convicted of all of them if he committed them separately, or if he possessed a separate animus as to each. R.C. 2941.25(B); *State v. Frazier* (1979), 58 Ohio St.2d 253, 12 O.O.3d 263, 389 N.E.2d 1118.

The Throwers allege that the indictment under which they were convicted of engaging in a pattern of corrupt activity alleged that a portion of the corrupt activity included matters for which they were indicted in case No. 88-09-1300. The elements of trafficking in drugs, R.C. 2925.03, and engaging in pattern of corrupt activity, R.C. 2923.32, do not correspond to such a degree that the commission of one results in the commission of the other. The conduct underlying the charge of engaging in a pattern of corrupt activity includes conduct independent of the conduct for trafficking in drugs. Thus, sentencing upon both offenses was proper. As previously stated, the Ohio RICO statute was patterned after the federal RICO statute. The purpose of the enactment of the federal RICO statute, as stated in Section 1 of Public Law 91-452, provides:

"It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922-23, reprinted in [1970] U.S.Code Cong. & Admin. News, at 1073; see, also, *United States v. Sutton* (C.A.6, 1983), 700 F.2d 1078, 1080-1081.

Assignment of Error VIII is not well taken.

### Assignment of Error I

"The defendants were denied their constitutional rights when the court proceeded to make determinations as to the nature and extent of the forfeiture at proceedings at which the defendants were not present."

The Throwers contend that the trial court committed prejudicial error by sentencing them to forfeiture in their absence. Specifically, the failure to allow the Throwers to attend the proceedings constituted a violation of their state and federal constitutional rights as well as the protection afforded them under Crim.R. 43(A).

In *State v. Williams* (1983), 6 Ohio St.3d 281, 286, 6 OBR 345, 349, 452 N.E.2d 1323, 1330, the Supreme Court stated:

"The Fifth Amendment to the federal Constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person 'of life, liberty, or property, without due process of law.' Similarly, Section 10, Article I of the Ohio Constitution mandates that '[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.' As the constitutional principle of 'due process' has evolved on both the state and federal levels, the courts have broadened its guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. See *Illinois v. Allen* (1970), 397 U.S. 337, 338 [90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356]; *State v. Grisafulli* (1939), 135 Ohio St. 87 [13 O.O. 440, 19 N.E.2d 645]; *Shields v. United States* (1927), 273 U.S. 583, 588–589 [47 S.Ct. 478, 479–480, 71 L.Ed. 787, 789–790]; *Jones v. State* (1875), 26 Ohio St. 208. In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim.R. 43(A) which provides, in pertinent part, that a 'defendant shall be present at * * * every stage of the trial * * *.' " See, also, *State v. Welch* (1978), 53 Ohio St.2d 47, 7 O.O.3d 128, 372 N.E.2d 346; *Columbus v. Rowland* (1981), 2 Ohio App.3d 144, 2 OBR 158, 440 N.E.2d 1365.

Thus, if the trial court failed to ensure the Throwers' presence at the sentencing of forfeiture, it violated both their constitutional and statutory rights.

The state contends that the court sentenced the Throwers to forfeit all their interest in the one hundred forty-one parcels of real estate at the February 22, 1989 hearing at which the Throwers were present. However, the court set another hearing date on the forfeiture for March 3, 1989. At this hearing, the Throwers sought to withdraw their guilty pleas, after which the hearing was adjourned.

The trial court's journal entry on March 6, 1989 ordered the Throwers to criminally forfeit their interests in the listed property. Moreover, the trial court ordered that the state make a determination of the disposition of the personal property.

R.C. 2923.32(B)(3) provides in pertinent part:

"The court shall order any person convicted of a violation of this section to criminally forfeit to the state any personal or real property in which he has an interest and that was used in the course of, intended for use in the course of, derived from, or realized through conduct in violation of this section, including any property constituting an interest in, means of control over, or influence over the enterprise involved in the violation and any property constituting proceeds derived from the violation * * *."

Additionally, R.C. 2923.32(B)(4) provides:

"A sentence of criminal forfeiture pursuant to division (B)(3) of this section shall not be entered unless the indictment or information alleges the extent of the property subject to forfeiture, or unless the sentence requires the forfeiture of property that was not reasonably foreseen to be subject to forfeiture at the time of the indictment or information, provided that the prosecuting attorney gave prompt notice to the defendant of such property not reasonably foreseen to be subject to forfeiture when it is discovered to be forfeitable.

"A special verdict shall be returned as to the extent of the property, if any, subject to forfeiture. When the special verdict is returned, a judgment of forfeiture shall be entered."

Thus, criminal forfeiture is part of the sentence for a person convicted of engaging in a pattern of corrupt activity. The record supports the fact that the Throwers were sentenced to forfeiture of one hundred forty-one parcels of real estate at the February 22, 1989 hearing at which they were present. However, the record shows that Throwers were not present at the time of the sentencing of criminal forfeiture as to the personal property that was ordered forfeited.

In addition to the errors raised by the Throwers, a court of appeals may consider those errors in the record which it discovers, but which have not been specifically raised by the appellant. *Garrison Carpet Mills v. Lenest, Inc.* (1979), 65 Ohio App.2d 251, 254, 19 O.O.3d 208, 210, 417 N.E.2d 1277, 1279. The doctrine of plain error permits this court to consider a perceived error in the trial court's journal entry. *State v. Walker* (1981), 2 Ohio App.3d 483, 484, 2 OBR 610, 611, 442 N.E.2d 1319, 1320–1321, citing *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221.

The court speaks only through its journal. *Brackmann Communications, Inc. v. Ritter* (1987), 38 Ohio App.3d 107, 109, 526 N.E.2d 823, 825. The February 28, 1989 journal entry regarding Thomas Thrower reads that:

"IT IS, THEREFORE, ORDERED AND ADJUDGED BY THIS COURT that the Defendant, THOMAS D. THROWER, be imprisoned and confined in

the OHIO STATE REFORMATORY at Mansfield, Ohio for a definite period of One and a Half (1½) Years and that he pay a fine in the amount of Two Thousand Dollars ($2,000.00) for punishment of the crime of TRAFFICKING IN MARIJUANA, Ohio Revised Code Section 2925.03(A)(3), a felony of the third (3rd) degree * * *."

Count one of the indictment, however, charges Thomas Thrower with a felony of the fourth degree. Although the sentence is within those permissible for either degree of felony, the trial court should make a correction in its journal entry.

Assignment of Error I is in part well taken.

## Assignment of Error V

"The court committed prejudicial error in not having the defendants present for the hearing on the motion to withdraw their pleas of guilty."

The Throwers assert that the trial court erred when they were not allowed to be present at their hearing on the motions to withdraw their guilty pleas. Crim.R. 32.1 provides that a defendant may make a motion to withdraw his plea of guilty before sentence is imposed or the imposition of sentence is suspended. It also provides that the trial court, after sentencing, may set aside a judgment of conviction and allow the defendant to withdraw his plea to correct manifest injustice. Crim.R. 32.1; *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324; *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863.

As previously stated, the Throwers were sentenced on the substantive charges and the forfeiture of one hundred forty-one parcels of real estate on February 22, 1989. On February 28, 1989, both Albert and Thomas made motions to withdraw their pleas of guilty. On March 3, 1989, at the second sentencing hearing, Albert, before sentencing was completed, told the court he wanted to withdraw his plea of guilty to every charge. Thereafter, on March 14, 1989, the Throwers, through their new counsel, made a motion to withdraw their guilty pleas and requested an evidentiary hearing.

On March 20, 1989, the trial court held an evidentiary hearing. The trial court stated at that hearing that it did not intend to bring the Throwers back for the hearing.

Appellate review of a trial court's denial of a motion to withdraw is limited to a determination of abuse of discretion, regardless of whether the motion to withdraw is filed before or after sentencing. *State v. Peterseim, supra.* Peterseim further concludes, at paragraph three of the syllabus, that:

"A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."

This court has held that an evidentiary hearing is required where a defendant alleges facts which, if proven, would result in a manifest injustice. *State.v. Szaraz* (Dec. 28, 1988), Summit App. No. 13696, unreported, 1988 WL 139567. See, also, *State v. Blatnik* (1984), 17 Ohio App.3d 201, 204, 17 OBR 391, 394, 478 N.E.2d 1016, 1020. Since the trial court held an evidentiary hearing, the trial court must have felt that the Throwers alleged sufficient facts which, if proven, would result in a manifest injustice. Thus, the issue in this case is whether the Throwers were denied due process because they were not present at the hearing.

At a minimum, due process of law requires notice and an opportunity to be heard. *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Goss v. Lopez* (1975), 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725. The Throwers, in their additional motion to withdraw their guilty pleas, requested an evidentiary and oral hearing. The state, in its response to this motion, requested that the motion to withdraw the guilty pleas be denied without a hearing. The trial court set an evidentiary hearing for March 20, 1989. Since an evidentiary hearing was held, the refusal of the trial court to allow the Throwers to be present denied them a meaningful opportunity to be heard.

For the foregoing reasons, Assignment of Error V is well taken.

### Assignments of Error VI and VII

"VI. The defendants were denied due process of law when the court did not specifically advise the defendants as to the penalties involved nor of the fact that the penalties precluded consideration for probation by the court.

"VII. The defendants were denied due process of law when the court did not determine that they understood the nature of the offenses to which they were entering pleas of guilty."

Because these assignments are interrelated, this court will address them together.

The Throwers contend that the trial court committed prejudicial error in failing to meet the requirements of Crim.R. 11(C) by informing them of the imposition of an actual term of incarceration before the acceptance of their

guilty pleas, thus making them ineligible for probation. Additionally, the Throwers assert that the trial court failed to ascertain that they understood the nature of the charge and the maximum penalty involved.

The state, on the other hand, argues that the trial court substantially complied with the requirements of Crim.R. 11(C) and that the Throwers knowingly, voluntarily and intelligently entered into the plea. Crim.R. 11(C) provides, in pertinent part, that:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation."

In the present case, prior to accepting Thomas' and Albert's guilty pleas, the trial court personally addressed each as to whether he understood the nature of the charges to which he was pleading. Each of them responded that he understood the nature of the charges to which he was pleading. See *State v. Ellis* (Aug. 26, 1987), Lorain App. No. 4206, unreported, 1987 WL 16491.

After the sentencing of Albert, and before accepting the pleas of guilty from Thomas, the following dialogue took place:

"MR. BULFORD: One other thing, Your Honor.

"THE COURT: Yes.

"MR. BULFORD: Should they be informed on the record that they're not being considered for probation because of the terms of actual incarceration that are included?

"THE COURT: Okay. Sure."

Additionally, after the sentencing of Thomas, the trial court stated:

"All of the time is to be served concurrently and not consecutively.

"Both of you must be aware that there is actual time involved on each and therefore you will not be subject to probation on that actual time."

The Ohio Supreme Court requires substantial compliance pertaining to the application of Crim.R. 11(C), which is based upon a review of the totality of the circumstances, to determine that no prejudice has resulted to the defendant. *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163; *State v. Flint* (1986), 36 Ohio App.3d 4, 520 N.E.2d 580. Crim.R. 11(C)(2)(a) does not require the trial court to specifically inform the defendant about probation ineligibility, but requires the trial court to determine that the defendant understands he is not eligible for probation. *State v.*

*Drake* (May 24, 1989), Lorain App. No. 4443, unreported, 1989 WL 54694. The trial court substantially complied with the provisions of Crim.R. 11(C).

The Throwers contend that the trial court failed to conduct a meaningful discussion with each defendant, explaining the maximum penalties to which each defendant subjected himself by his pleas. The trial court asked Albert and Thomas if they understood the maximum penalties that could be imposed on the charges. Each responded in the affirmative.

Considering that a conviction for engaging in a pattern of corrupt activity includes not only incarceration, but the additional sentence of criminal forfeiture, the trial court should have been more careful in how the pleas were taken. Clearly, the trial court did not delineate the criminal forfeiture of the personal property as part of the sentencing.

The test of prejudice is not whether the Throwers had knowledge of a maximum sentence involved, but whether the plea would otherwise have been made. *State v. Johnson* (1988), 40 Ohio St.3d 130, 134, 532 N.E.2d 1295, 1299. The Throwers argued at trial and on appeal that the court did not comply with Crim.R. 11(C). Nowhere do the Throwers argue that they were unaware of the consequences of their pleas and that had they been aware they would not have pleaded guilty. Thus, the Throwers have failed to show prejudice.

As to these issues in the Throwers' motions to withdraw their guilty pleas because of non-compliance with Crim.R. 11, they are not well taken. Accordingly, Assignments of Error VI and VII are overruled.

For the foregoing reasons, this court orders this matter remanded for a rehearing on the motions to withdraw the Throwers' guilty pleas in conformance with this decision and the law. Additionally, the judgment of sentencing of criminal forfeiture of any property other than the one hundred forty-one parcels of real estate is vacated and remanded for sentencing of criminal forfeiture as to any property other than the one hundred forty-one parcels of real estate, in the Throwers' presence, in accordance with the law. The trial court should correct its journal entry as to Thomas Thrower on count one of the indictment. In all other aspects, the judgment of the trial court is affirmed.

*Judgment accordingly.*

CACIOPPO, P.J., and BAIRD, J., concur.

ROBERT B. HINES, J., of the Probate/Juvenile Court of Holmes County, sitting by assignment.