DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Clarence Banks, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Paula Nelson and Banks had a child together in 2007, but were never married. On December 10, 2007, Nelson agreed to take Banks to a friend's house so the two could celebrate Banks' birthday. Shortly after arriving there, Banks wanted to leave so he and Nelson could have sex. She refused, but instead agreed to take him to his brother's house. As they were driving there, Banks attempted to remove the car's keys from the ignition. When Nelson resisted his efforts, he bit her hand and punched her face and head. Once the struggle ensued, Nelson pulled the car off the road and removed the keys from the ignition, at which point they were thrown into the backseat. Nelson reported to police that during the parties' struggle to recover the keys, Banks continued to bite her on the face and hand, punched her in the face and ribs, tried *Page 2 
to strangle her, and told her he was going to kill her. Nelson ran from the car to the nearest house where she called 911.
 {¶ 3} Banks found the keys to Nelson's car and when police arrived, he fled the scene. When Nelson told police that Banks was driving away in her car, they began pursuing him. With the passenger door ajar, Banks continued driving from the scene despite being followed by police who had activated their sirens and lights. Banks fled through a residential neighborhood and ran two stop signs before hitting a tree and totaling Nelson's car. Banks sustained a broken arm and a concussion. He was bleeding from his head and mouth when he fell out of the car to the ground and stated to police "I am going to kill my wife because she doesn't love me anymore." Banks maintains that he was intoxicated that night and does not recall any of the aforementioned events. Nelson was treated and released for her bite wounds and associated injuries.
 {¶ 4} On December 27, 2007, Banks was charged with kidnapping in violation of R.C. 2905.01(A)(2)/(3)/(4), a first degree felony; intimidation of a crime victim or witness in violation of R.C. 2921.04(B), a third degree felony; two counts of domestic violence in violation of R.C. 2919.25 (A) and (C), a third degree felony and first degree misdemeanor respectively; two counts of failure to comply with the order or signal of police officer in violation of R.C. 2921.331(B), a third and fourth degree felony respectively; grand theft in violation of R.C. 2913.02(A)(1)/(2)/(4), a fourth degree felony; driving under suspension in violation of R.C. 4510.11, a first degree misdemeanor; and three misdemeanor traffic violations (stop sign, failure to control, and speeding in violation of R.C. 4511.12, R.C. 4511.202, and R.C. 4511.21).
 {¶ 5} On March 12, 2008, the State amended the kidnapping charge to robbery and offered Banks an agreed sentence of five years. Banks plead guilty to robbery and all other *Page 3 
charges listed on the original indictment, but rejected the State's sentencing offer. On April 30, 2008, Banks was sentenced to a total of 14 years in prison: five years for robbery, two years for intimidation of a crime victim, four years for domestic violence, and three years for failure to comply with the order or signal of police officer (where the third and fourth degree felonies were merged). Banks received six months for domestic violence menacing to run concurrent with the other domestic violence count. Banks was sentenced to one year for grand theft, which was merged with the robbery count. Banks was sentenced to 180 days for driving under suspension and costs to be paid for the traffic violations. Banks now appeals from his conviction and sentence.
 II Assignment of Error Number One "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT IMPOSED A SENTENCE AGAINST CLARENCE BANKS WHICH WAS GROSSLY DISPROPORTIONATE TO HIS CRIME AND INCONSISTENT WITH SIMILARLY SITUATED OFFENDERS."
 {¶ 6} In his first assignment of error, Banks argues that his 14 year sentence was grossly disproportionate to his crime because it failed to take into consideration the sentencing guidelines factors set forth in R.C. 2929.12. He further argues that his sentence was inconsistent with other similarly situated offenders. We disagree.
 {¶ 7} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Court found that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact-finding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the Court excised the portions of the statute it found to offend theSixth Amendment and thereby granted full discretion to trial court judges to sentence defendants within the bounds prescribed by statute. See id.;State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19. Additionally, *Page 4 Foster altered this Court's standard of review which was previously a clear and convincing error standard. State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 11. The Ohio Supreme Court recently clarified, that:
 "In applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, at ¶ 4.
 {¶ 8} Our review of the record reveals that Banks' sentence was within the applicable rules and statutes and was not contrary to law, as his felony and misdemeanor sentences all fell within the sentencing ranges set forth in R.C. 2929.14(A) and R.C. 2929.24(A) respectively. Accordingly, this Court reviews Banks' sentence utilizing an abuse of discretion standard. Windham at ¶ 12.
 {¶ 9} An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Ports v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 10} The Foster Court noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. Moreover, post-Footer, it is axiomatic that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Therefore, post-Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions. *Page 5 
 {¶ 11} We next turn to R.C. 2929.12(A) for the general guidance factors associated with felony sentencing and find that:
 "[A] court that imposes a sentence * * * upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors * * * relating to the seriousness of the conduct and the factors * * * relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing."
Additionally, "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).
 {¶ 12} Banks' argument largely stems from the disparity in the 14 year sentence he ultimately received as compared to the State's original plea offer to him for a five year sentence. In response to receiving the State's Sentencing Brief, which recommended a 15 and a half year sentence, Banks filed a reply brief where he attempted to identify a similarly situated offender who had plead to a two year sentence with three years probation. The case he directed the trial court to and again argues to this Court, however, involved a defendant who plead guilty to felonious assault, domestic violence, and misdemeanor child endangerment, much unlike the six felonies and five misdemeanors that Banks plead guilty to in this case. Thus, Banks failed to identify any similarly situated offender and consequently, has failed to demonstrate that his sentence was grossly disproportionate. Moreover, we have held that "two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment." State v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987, at ¶ 13. "Simply stated, Ohio's sentencing guidelines are just that, guidelines. Unless specifically stated, they do not require the imposition of a specific sentence. Rather, they require that the *Page 6 
trial court consistently consider the same principles and characteristics prior to sentencing." State v. Ruby, 9th Dist. No. 23219, 2007-Ohio-244, at ¶ 13. Furthermore,
 "[T]he only way for [Banks] to demonstrate that his sentence was `inconsistent,' that is, contrary to law within the meaning of R.C. 2929.11(B), is if he establishes that the trial court failed to properly consider the factors and guidelines contained in R.C. 2929.12, R.C. 2929.13 and R.C. 2929.14. These sections, along with R.C. 2929.11, create consistency in sentencing." Quine at ¶ 13.
 {¶ 13} Banks does not assert that the trial court erred by not considering these factors, but instead argues that it failed to appropriately account for his history and conduct. Banks argues that a review of the seriousness factors pursuant to R.C. 2929.12(B) and (C) supports a finding that his conduct was "less serious than conduct normally constituting the offense" because he has accepted responsibility for his conduct by pleading guilty and that his judgment was adversely impaired when he committed the offenses because he was intoxicated. He further maintains that were he sober, he never would have committed the offenses. Relative to the recidivism factors outlined in R.C. 2929.12(D) and (E), Banks admits that he has a serious alcohol problem, that he has past felony and misdemeanor domestic violence convictions, and that he has twice violated his community control provisions, but notes that he has expressed remorse for his conduct in this case. Finally, Banks argues that despite his serious alcohol problem, he was able to maintain a job and serve as the custodial parent to his son from March 2005 — December 2007.
 {¶ 14} Our review of the record leads us to conclude that the trial court appropriately considered these sentencing parameters in deciding Banks' sentence. The judge commented at the hearing that he had read Banks' sentencing brief and there was a brief discussion relative to the case Banks offered as a similarly situated offender. Specifically, the court noted that Banks had committed two prior domestic violence offenses against Nelson, where Banks similarly hit, *Page 7 
punched, and bit her, in addition to threatening to kill her. The court noted that Nelson has been the repeated victim of Banks' criminal conduct and that "the purpose of sentencing is to protect the public and to punish the offender." The court further stated it had reviewed the presentence investigation report, so we presume that it took that report into consideration when imposing its sentence. See State v. O `Neal
(Sept. 29, 1999), 9th Dist No. 19255, at *2-3. Because Banks has not included the presentence investigation in the record on appeal before us, we further presume the validity of the trial court's rationale in support of his sentence. State v. Cox (Apr. 12, 2000), 9th Dist. No. 19773, at *2. Banks points to no evidence that the trial court "failed to properly consider the factors and guidelines" in his sentencing, other than generally averring that his sentence was significantly longer than the State's plea offer. See Quine, supra. Thus, his first assignment of error is without merit.
 {¶ 15} We also note that Banks was fully aware that by rejecting the State's offer of an agreed five year sentence, he would be subject to the court's determination of his sentence. At his plea colloquy, the court confirmed that Banks was aware "there would be a Presentence Investigation * * * and sentencing would be up to the Court" because he had declined the State's offer. The judge then went the additional step to explain and confirm that Banks understood that he "could get less, [he] could get more, [he] could get the same. Just depends on the facts, the Presentence Investigation, and [the judge's] review of the offenses." It is obvious to us that Banks understood he could get sentenced to more than five years for his convictions. With the benefit of hindsight, Banks now asks this Court to find his sentence unreasonable and unconscionable, which we decline to do. *Page 8 
 {¶ 16} Having found that the trial court acted within its discretion when sentencing Banks, we consider his argument on appeal without merit. Accordingly, Banks' first assignment of error is overruled.
 Assignment of Error Number Two "THE TRIAL COURT ERRED AS A MATTER OF LAW IN SENTENCING MR. BANKS TO CONSECUTIVE SENTENCES FOR ALLIED OFFENSES OF SIMILAR IMPORT WHICH WERE COMMITTED WITH A SINGLE ANIMUS."
 {¶ 17} In his second assignment of error, Banks argues that the robbery, intimidation of a crime victim or witness, two counts of domestic violence, two counts of failure to comply with a police officer and/or grand theft constitute, in whole or in part, allied offenses of similar import that Banks committed with a single animus. We disagree.
 {¶ 18} The Double Jeopardy Clause of the United States Constitution, as applied through Section 10, Article I of the Ohio Constitution, prohibits the allocation of multiple punishments for the same offense.State v. Brown, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶ 10. If two offenses are found to be allied offenses of similar import, such that the same conduct supports each offense, then the sentencing court may not impose a separate punishment for each offense. Id. at ¶ 11-12. To determine whether two offenses are allied offenses of similar import, a reviewing court must first look to the statutory language of the offenses to determine whether the Generally Assembly plainly and unambiguously intended for the statute(s) to set forth separately punishable offenses. Id. at ¶ 37-40. If no plain and unambiguous intent emerges from the statutory language, then the court must employ the two-part test set forth in R.C. 2941.25 to determine whether two offenses are allied offenses of similar import. Id. at ¶ 12. *Page 9 
 {¶ 19} R.C. 2941.25 provides that:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
Thus, a defendant may be convicted of two offenses if the offenses are either: "(1) offenses of dissimilar import [or] (2) offenses of similar import committed separately or with a separate animus." Brown at ¶ 17, citing State v. Rance (1999), 85 Ohio St.3d 632, 636.
 {¶ 20} The Supreme Court has explained the first part of R.C. 2941.25's test as follows:
 "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus.
 {¶ 21} The second part of R.C. 2941.25's test then requires the court to consider the defendant's conduct. Id. at ¶ 14, quoting State v.Blankenship (1988), 38 Ohio St.3d 116, 117. "If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." (Emphasis sic.) Blankenship, 38 Ohio St.3d at 117. The term "animus" refers to a person's "purpose or, more properly, immediate motive."State v. Logan (1979), 60 Ohio St.2d 126, 131.
 {¶ 22} In this case, Banks pled guilty to the amended charge of robbery, as well as all of the other charges listed in the original indictment. This Court has previously held that "[w]hen a defendant pleads guilty and then affirmatively raises the issue of allied offenses, the trial court *Page 10 
must conduct a hearing to determine whether any of the offenses to which the defendant has pleaded are allied offenses of similar import with a single animus." State v. Thrower (1989), 62 Ohio App.3d 359, 376. Banks, however, failed to object on this ground at sentencing, thus he has forfeited his right to raise it on appeal. State v. Adkins (Jan. 29, 1997), 9th Dist. No. 17828, at *7; see, also, Thrower,62 Ohio App.3d at 376. Accordingly, Banks' second assignment of error is overruled.
 III {¶ 23} Banks' first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 11 
 CARR, P. J., DICKINSON, J., CONCUR. *Page 1