DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas. Following a trial, the jury found appellant David Taylor guilty of two counts of trafficking in crack cocaine, one count of trafficking in crack cocaine with a major drug offender specification, and one count of intimidation of a crime victim or witness. For the reasons that follow, this court affirms the judgment of the trial court.
The evidence adduced at trial is as follows. This case stems from three controlled drug buys conducted by the Toledo Police Division Vice-Narcotics Section with the help of a confidential informant now identified as Simon Mitchell. The controlled buys were undertaken by the Police Division after Simon Mitchell was himself arrested for drug trafficking and he identified appellant as his supplier.
The first controlled buy occurred on October 31, 1997. On that date, Detective Duane Poole was present when Mitchell paged appellant and entered the code "500" on the pager, the code for one-half of an ounce of crack cocaine. Detective Poole had previously verified that the pager number that Mitchell called was registered to appellant. When appellant called Mitchell in response to the page, Detective Poole recorded the telephone conversation. He also listened in on the conversation on an extension. During the telephone conversation, appellant and Mitchell negotiated the sale and purchase of crack cocaine. Appellant and Mitchell agreed to meet at 639 South Avenue in Toledo, Lucas County, Ohio to conduct the transaction.
Before allowing Mitchell to proceed to 639 South Avenue, Detective Poole searched him to ensure that he had no money or drugs on his person. Detective Poole also conducted an extensive search of Mitchell's vehicle to ensure that it contained no money or drugs. Detective Poole then gave Mitchell $500 of vice-narcotics funds. At the time of the search, one or two other vice-narcotics detectives had already proceeded to 639 South Avenue to conduct surveillance.
After Detective Poole searched Mitchell and his vehicle, Detective Poole and another detective followed Mitchell to 639 South Avenue. Detective Poole testified at trial that he had constant visual contact with Mitchell's vehicle during the entire drive to the agreed-upon location. Upon arriving at 639 South Avenue, the detectives watched Mitchell walk around to the back of the house, where the only available entrance was located.[1] Some moments later, Detective Poole observed Mitchell emerge from the house, and Detective Poole then followed him to the bus station in Toledo, a location at which he and Mitchell had previously agreed to meet.
Once at the bus station, Mitchell handed Detective Poole a bag of a substance that, in Detective Poole's experience, appeared to be crack cocaine in an amount consistent with a $500 buy. Detective Poole searched Mitchell and found no money or other drugs on his person. Detective Poole took the bag of suspected cocaine that Mitchell had handed him and turned it over to the night property room at the downtown police station.
A similar controlled buy occurred on November 4, 1997. On that day, Detective Poole watched as Mitchell punched the pager number previously identified as being registered to appellant. He then witnessed Mitchell punch in the code "1000," which in the vernacular means $1000, or one ounce of crack cocaine. Appellant called Mitchell back, but this time Detective Poole only recorded the conversation; he did not listen in. Again, appellant and Mitchell agreed to meet at 639 South Avenue. During this buy, Mitchell was equipped with a recording device: a microphone on a cell phone battery. Once again, Detective Poole searched Mitchell's person and vehicle and found no money or drugs. This time, Detective Poole gave Mitchell $1000 of vice-narcotics funds. After other detectives were given several minutes to set up surveillance at 639 South Avenue, Detective Poole followed Mitchell in his vehicle to the agreed-upon location. During the drive, Detective Poole ran a test with Mitchell to verify that the recording device worked.
Once at 639 South Avenue, the detectives watched Mitchell proceed to the back entrance of the house. They listened for thirty to forty-five minutes as Mitchell made small talk with some women inside the residence while waiting for appellant to arrive. Finally, Detective Poole saw a car (a Cadillac) that he recognized as appellant's car pull up to the front of the residence, and he observed a male that he recognized as appellant emerge from the car and proceed toward the back of the house.[2]
Listening in on the recording device, Detective Poole heard someone say, "I got it. Just a minute. I got to go get it." About ten seconds later he heard Mitchell counting out money, and within thirty seconds, he observed Mitchell leaving the house. Once again, Detective Poole followed Mitchell to an agreed-upon location, where Mitchell handed Detective Poole a bag containing a substance that, in Detective Poole's experience, appeared to be crack cocaine in an amount consistent with a $1000 buy. Detective Poole searched Mitchell and found no money or other drugs on his person. He then processed the bag of suspected cocaine and that night turned it over to the night property room. After this buy, Detective Poole made arrangements with Mitchell to help with another buy on November 7, 1997, at which they would try to buy five ounces of crack cocaine. Detective Poole had determined that, after the November 7, 1997 buy had been consummated, he and other officers would execute a search warrant of the premises from which the drugs were sold.
On November 7, 1997, Detective Poole witnessed Mitchell punch in a pager number which Detective Poole had previously identified as being registered to appellant. When appellant called back, Detective Poole recorded appellant's phone conversation with Mitchell, but this time he did not listen in on the line.[3] Detective Poole listened to the recorded conversation in which Mitchell told appellant that he wanted five ounces of crack cocaine. Appellant indicated that he was not sure he could get five ounces, but he could get three ounces. Appellant and Mitchell negotiated a price of $2,800 for the three ounces of crack cocaine. Detective Poole gave Mitchell $2,800 of vice-narcotics funds, which Detective Poole had previously photocopied in order to trace the serial numbers on the bills. As he had before, Detective Poole searched Mitchell before Mitchell proceeded to 639 South Avenue, the agreed-upon location, and he equipped Mitchell with a recording device. As he had with the other buys, Detective Poole followed Mitchell to 639 South Avenue.
After Mitchell was in the house for approximately ten minutes, Detective Poole observed a Cadillac he recognized as appellant's car approach the house from the front and then drive away. One of the other officers on surveillance observed the Cadillac pull around to the back of the house. Listening in on the recording device, Detective Poole heard a conversation between appellant and Mitchell. Though the recording device was not particularly clear, Detective Poole testified that he heard sounds that he believed to be Mitchell counting the money. When Detective Poole heard Mitchell say the words that they had agreed would be a signal that Mitchell had seen the cocaine, the first team of police officers entered the home and began executing the search warrant. When Detective Poole entered the house, he found appellant and Mitchell lying on the floor of the living room. Near their feet was a large quantity of crack cocaine and $2,800 in cash. The serial numbers of the money found at the scene matched the serial numbers on the bills that Detective Poole had given to Mitchell. The officers searched appellant and identified him as David Taylor. Appellant was arrested.
At trial, Mitchell testified that when he was at 639 South Avenue on November 7, 1997, appellant indicated that he was, in fact, able to get the full five ounces, and appellant offered to sell the full five ounces of crack cocaine to him. Mitchell explained to appellant that he only had enough money for three ounces. He testified that appellant gave him the three ounces of crack cocaine and he gave appellant the $2,800. He also testified that when the officers burst through the door to execute the search warrant, he threw the three ounces onto the floor as instructed by the officers prior to the raid.
The suspected cocaine recovered from the three buys was tested and weighed by a criminalist from the Toledo Police Crime Lab. All of the substances in all of the bags tested positive for crack cocaine. State's Exhibit 5, one bag of crack cocaine, weighed 12.41 grams; State's Exhibit 6, one bag of crack cocaine, weighed 25.51 grams; and State's Exhibit 8, two bags of crack cocaine, weighed 40.19 grams and 79.91 grams, for a total of 120.1 grams.
The intimidation charge stems from an incident on December 18, 1997. Mitchell's undisputed testimony was that, around the time of the third buy, he moved from his apartment to another location because he feared retaliation by appellant. He testified at trial that on the evening of December 18, 1997, he was walking out of his apartment building when he heard someone say, "Hey, what's up Red"? ("Red" is Mitchell's nickname.) When Mitchell looked up he saw appellant and four males standing in front of him. The four men were dressed in black and had black hoods on that were drawn very closely around their faces. Appellant's face was not covered. According to the testimony, appellant then said, "Man, why you do that to me"? while reaching under his coat as if to reach for a weapon. Mitchell testified that he was terrified and that he ran away. There is no evidence in the record that appellant actually had a gun.
As a result of the three controlled buys and the events near Mitchell's apartment on December 18, 1997, the grand jury presented a five count indictment. Count One alleged a violation of R.C. 2923.32(A), Engaging in a Pattern of Corrupt Activity ("RICO"), a first degree felony. The predicate acts for this count included a 1994 conviction for trafficking in drugs, a 1994 conviction for drug possession, and the acts alleged in Counts Two through Five of the present indictment. Count Two alleged trafficking in crack cocaine in violation of R.C. 2925.03(A) and (C)(4)(e), a second degree felony, based on the October 31, 1997 controlled buy. Count Three alleged trafficking in crack cocaine in violation of R.C. 2925.03(A) and (C)(4)(f), a first degree felony, based on the November 4, 1997 controlled buy. Count Four alleged trafficking in crack cocaine in violation of R.C.2925.03(A) and (C)(4)(g), a first degree felony, based on the November 7, 1997 controlled buy. This count included a major drug offender specification pursuant to R.C. 2941.1410. Count Five alleged intimidation of a crime victim or witness in violation of R.C. 2921.04(B), a third degree felony, based on the events outside of Simon Mitchell's apartment on December 18, 1997.[4]
The case came up for trial on August 18, 1998. That morning, before the jury was seated, appellant filed a combined "Motion to Dismiss" and "Motion to Sever." The motion to dismiss was based on an alleged speedy trial violation. In the motion to sever, appellant moved to sever Count One of the indictment (Engaging in a Pattern of Corrupt Activity) from the remaining counts. The trial court denied the motion to sever and stated, "We shall proceed on all counts today." The case proceeded to trial. Following the state's case, the defendant moved to dismiss Count One of the indictment, and the court granted the motion. The defense did not put on a case. After deliberation, the jury found appellant guilty on Counts Two through Five.
Appellant now appeals, setting forth six assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 A CRIMINAL RULE 29 DISMISSAL OF A VIOLATION OF R.C. 2923.32(A), ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, AT THE CLOSE OF THE STATE'S CASE, AND AFTER AMENDMENT BY THE STATE DELETING ALL OF THE ENTERPRISE PARTICIPANTS EXCEPT THE ALLEGED SELLER AND BUYER OF DRUGS BARS A SECOND PROSECUTION OF THE UNDERLYING INDIVIDUAL SALES WHEN THOSE SALES ARE INCLUDED IN THE RICO COUNT AS THE ONLY REMAINING PREDICATE ACTS
"ASSIGNMENT OF ERROR NO. 2
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AS TO THE INTIMIDATION CHARGE AND THE THREE AGGRAVATED TRAFFIKING [sic] IN DRUG CHARGES
"ASSIGNMENT OF ERROR NO. 3
 A TRIAL COURT COMMITS PREJUDICIAL ERROR BY NOT GRANTING A DEFENDANT'S MOTION TO SEVER A RICO VIOLATION FROM OTHER CHARGES WHEN THE EVIDENCE IN THE RICO CHARGE PREJUDICES THE DEFENDANT IN THE REMAINING CHARGES
"ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRED BY RECEIVING A VERDICT SIGNED BY ONLY ELEVEN JURORS AND RECEIVING VERDICT FORMS CHANGING THE NAME IN THE INDICTMENT FROM `DAVID L. TAYLOR' TO `DAVID LEE TAYLOR, JR.'
"ASSIGNMENT OF ERROR NO. 5
 THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED WHEREIN THE STATE FAILED TO BRING THE DEFENDANT TO TRIAL WITHIN 270 PURSUANT TO RC 2945.71, ART 1, SEC 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION
"ASSIGNMENT OF ERROR NO. 6
 THE STATE VIOLATED DISCOVERY BY NOT TURNING OVER STATEMENTS OF MATERIAL WITNESSES"
Appellant claims in his first assignment of error that his double jeopardy rights were violated. This argument arises out of the relationship between Count One, Engaging in a Pattern of Corrupt Activity, and the remaining charges: the predicate acts for the first count are the drug trafficking and intimidation charges named in the Second, Third, Fourth, and Fifth Counts. According to appellant, when the trial court dismissed the first count, including the predicate acts, that dismissal on the merits barred any prosecution on the charges in Counts Two through Five. Appellant's argument is without merit. It is well-established in Ohio that prosecution on a RICO charge does not bar prosecution and sentencing on the predicate drug trafficking charges. SeeState v. Thrower (1989), 62 Ohio App.3d 359, 377, jurisdictional motion not well-taken (1990), 49 Ohio St.3d 717; State v. Caudill
(Dec. 2, 1998), Hancock App. No. 5-97-35, unreported, discretionary appeal not allowed (1999), 85 Ohio St.3d 1456; Statev. Nieves (Feb. 26, 1997), Lorain App. No. 96CA006379, unreported, discretionary appeal not allowed (1997), 79 Ohio St.3d 1446; Statev. Hughes (March 13, 1992), Miami App. No. 90-CA-54, unreported. Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant argues that the verdict was against the manifest weight of the evidence and that the evidence was insufficient. "Weight of the evidence" and "sufficiency of the evidence" are two distinct legal concepts.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, reconsideration denied (1997),78 Ohio St.3d 1451. "Sufficiency of the evidence" is a legal standard that the court applies to determine if a case should go to a jury or to determine whether there is sufficient evidence to support a verdict. Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. According to the Supreme Court of Ohio, "sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386. In contrast, "weight of the evidence" refers to the jury's resolution of conflicting testimony. Id. at 387. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387.
With regard to the drug trafficking charges, appellant contends that the evidence as to Count Four is insufficient and that the verdict is against the manifest weight of the evidence for two reasons. First, according to appellant, Mitchell only testified that appellant sold him 79.9 grams, not 100 grams as indicated in the indictment. However, the statute, R.C.2925.03(A) and (C)(4)(g), makes it illegal to "sell" or "offer to sell." Mitchell testified that appellant offered to sell him five ounces, which is in excess of 100 grams. Second, appellant contends that the evidence was insufficient and the verdict was against the manifest weight of the evidence because Mitchell did not identify the crack cocaine introduced at trial as the cocaine that appellant sold him. Nevertheless, Detective Poole identified the crack cocaine introduced at trial as the same cocaine that Mitchell had handed him after each buy and that Detective Poole had turned over to the property room.
Considering the above, and applying the sufficiency and manifest weight standards to the drug trafficking charges, we conclude as a matter of law that the evidence was sufficient to both go to the jury and to support the verdict. See Thompkins,78 Ohio St. 3d at 386. The detailed testimony of the state's witnesses explaining the three controlled buys created sufficient evidence, as a matter of law, to justify sending the case to the jury and to support the verdict. Similarly, we find that the verdict is supported by the manifest weight of the evidence. Since the defense did not put on a case, the jurors did not need to resolve any conflicts in the testimony, and they apparently found the state's witnesses to be credible. Sitting as the "thirteenth juror," this court cannot say that the jury "lost its way" or created such a "manifest miscarriage of justice" so as to warrant reversal and a new trial. Id. at 387.
With regard to the intimidation charge, appellant argues that the evidence was insufficient and that the verdict was against the manifest weight of the evidence because no "legal proceedings" had yet begun at the time of the intimidation. R.C.2921.04(B) provides:
 "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
In this case, the alleged intimidation occurred on December 18, 1997, after appellant's November 7, 1997 arrest but before appellant was indicted on January 22, 1998. However, as the Fifth District Court of Appeals has noted, evidence of any threats aimed at discouraging a witness's involvement in a forthcoming criminal proceeding is legally sufficient evidence of intimidation in violation of R.C. 2921.04(B). State v. Hummell (June 1, 1998), Morrow App. No. CA-851, unreported. See, also, State v. Crider
(1984), 21 Ohio App.3d 268, 269 (applying similar reasoning for victim witnesses.) These cases follow the spirit of R.C.2921.04(B), and we find them persuasive.
Applying the sufficiency and manifest weight standards to the intimidation charge, when considering Mitchell's undisputed testimony about the entire context of his December 18, 1997 encounter with appellant and appellant's companions, we can only conclude that the evidence was sufficient to go the jury and to support the verdict on this count of the indictment. Similarly, we cannot say that the jury "lost its way" when rendering its verdict on this count of the indictment. Accordingly, we hold that the jury's verdict on the intimidation charge was supported by sufficient evidence and was not against the manifest weight of the evidence, and the second assignment of error is not well-taken.
In his third assignment of error, appellant argues that the trial court erred in denying his motion to sever the RICO count from the remaining counts. According to appellant, since the first two predicate acts for the RICO charge were his prior convictions for aggravated trafficking in drugs and possession of drugs, he would be prejudiced in the remaining counts of the indictment because the jury would know of his prior convictions. Crim.R. 14 provides, in pertinent part:
 "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *."
A criminal defendant seeking separate trials on multiple offenses has the burden of affirmatively showing to the trial court that his rights will be prejudiced. State v. Brooks (1989),44 Ohio St.3d 185, 194, quoting State v. Roberts (1980), 62 Ohio St.2d 170,175, certiorari denied (1980), 449 U.S. 879. On appeal, the defendant-appellant has the burden of affirmatively showing that his rights were prejudiced and that the trial court abused its discretion in refusing to order separate trials. Brooks,44 Ohio St. 3d at 193, quoting State v. Torres (1981), 66 Ohio St.2d 340,343; State v. Mathis (Nov. 5, 1993), Lucas App. No. L-92-299, unreported. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
In this case, we cannot say that the trial court abused its discretion in denying appellant's motion to sever. First, at the close of the state's case, the state orally moved to amend the indictment to remove the first two predicate acts (the prior convictions) from the RICO charge. Further, appellant does not appear to dispute that the state never offered any evidence as to appellant's prior convictions. Therefore, appellant has not demonstrated that he was prejudiced when the RICO charge was tried with the remaining charges. Moreover, to the extent that appellant is asserting that the "cumulative effect" of trying all of the charges together caused him prejudice, the Supreme Court of Ohio has held that a defendant is not prejudiced in this way when the evidence is direct and uncomplicated. Brooks,44 Ohio St.3d at 194-195. When evidence is direct and uncomplicated, the jury is believed to be capable of segregating the evidence. Id. Here, the evidence was direct and uncomplicated. Counts Two through Five of the indictment were all based on separate incidents on separate dates, and the jury could have easily segregated the proof as to each charge. Moreover, the evidence was uncomplicated as it was undisputed. For all of these reasons, appellant's third assignment of error is not well-taken.
In his fourth assignment of error, appellant contends that the trial court erred in receiving a verdict form for one count signed by only eleven jurors and by receiving a verdict form changing the name on the indictment from "David L. Taylor" to "David Lee Taylor, Jr." There is nothing in the record to indicate that appellant raised these matters as error in the trial court. According to the Supreme Court of Ohio, if a party fails to raise an alleged error at trial, that error is waived unless it amounts to plain error. State v. Waddell (1996), 75 Ohio St.3d 163,166; State v. Joseph (1995), 73 Ohio St.3d 450, 455, reconsideration denied (1995), 74 Ohio St.3d 1423, certiorari denied (1996), 516 U.S. 1178. In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different. Id.;Waddell, 75 Ohio St.3d at 166.
In this case, appellant does not argue that the outcome of the trial would have been different had the alleged errors not occurred, and there is nothing in the record to suggest that the outcome of the trial would have been different. Since the trial court's acceptance of the allegedly defective verdict forms does not rise to the level of plain error, appellant's fourth assignment of error is not well-taken.
Appellant argues in his fifth assignment of error that his speedy trial rights were violated because he was not brought to trial within two hundred seventy days of his arrest. See R.C.2945.71(C)(2). The trial court's denial of a motion to dismiss based on a speedy trial violation is reviewed as a mixed question of law and fact. State v. McDonald (June 30, 1999), Mahoning App. Nos. 97 C.A. 146, 97 C.A. 148, unreported, discretionary appeal not allowed (1999), 87 Ohio St.3d 1433; State v. Jones
(June 4, 1996), Ross App. No. 95CA2128, unreported. Applying this standard, we must give due deference to the trial court's findings of fact as long as they are supported by competent credible evidence, but we must also independently review the trial court's application of the law to the facts. Id.; State v. McDonald, supra.
In this case, though appellant filed a combined "Motion to Dismiss" and "Motion to Sever" based upon, among other things, speedy trial, it appears from the record that he withdrew the motion to dismiss on the morning of trial. According to the transcript, on the morning of trial, appellant's attorney stated to the trial court, "* * * just for the record, as far as the speedy trial time is concerned, I would have to further look at the records to see what the prior counsel had filed. I think that's not necessarily dispositive right at this moment. There is no need to rule on that. I just wanted to have that filed before trial." Nevertheless, considering this assignment of error on the merits, we hold that the assignment of error is not well-taken, as appellant failed in his burden to submit the part of the record showing a speedy trial violation. See Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19; Columbus v. Link (1998),127 Ohio App.3d 122, 126 (both cases holding that it is appellant's duty to ensure that the portions of the record necessary to determine the appeal have been filed with the appellate court). In this case, appellant has not transmitted any portion of the record that would aid us in making a determination on the speedy trial assignment of error. As such, we must presume the validity of the trial court's proceedings. Id.
Finally, in his sixth assignment of error, appellant argues that the state violated discovery by refusing to turn over certain witness statements. The record contains no indication that appellant ever raised this issue in the trial court. Accordingly, appellant has waived this error. State v. Waddell,75 Ohio St.3d at 166; State v. Joseph, 73 Ohio St.3d at 455. Further, this alleged error does not rise to the level of plain error as there is no evidence in the record that the outcome of the trial would have been different. Id. Accordingly, the sixth assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
PETER M. HANDWORK, J., MELVIN L. RESNICK, J., and MARK L. PIETRYKOWSKI, J., concur.
[1] Once Mitchell was inside the house, the detectives were unable to monitor him because he refused to wear a recording device for this particular buy.
[2] At trial, Detective Poole identified appellant as the individual he observed getting out of the Cadillac and going into the house.
[3] Detective Poole testified at trial that the voice he heard on the other end of the recorded telephone conversation was a voice with which he had become familiar during the course of this investigation, a voice he came to recognize as appellant's.
[4] Count Four, Count Five, and Counts Two and Three were originally indicted separately under separate case numbers. Subsequently, the state entered a nolle prosequi as to all of these indictments. Appellant was then re-indicted for the same charges in the present indictment, and the RICO count was added.