THE STATE OF OHIO, APPELLEE, *v.* FLINT, APPELLANT.

(No. 50784—Decided August 4, 1986.)

*John T. Corrigan,* prosecuting attorney, and *Timothy X. McGrail,* for appellee.

*Hyman Friedman,* county public defender, and *Robert M. Ingersoll,* for appellant.

PATTON, J. This appeal arises as a result of the judgment entered by the Cuyahoga County Court of Common Pleas which accepted the appellant's plea of guilty to robbery, a violation of R.C. 2911.02. The facts giving rise to this appeal as contained in the record provide as follows.

On November 29, 1984, the Cuyahoga County Grand Jury indicted appellant, Maurice D. Flint, on one count of robbery in violation of R.C. 2911.02. On December 6, 1984, appellant was arraigned and entered a plea of not guilty. On January 14, 1985, appellant withdrew his previous plea and entered a plea of guilty to the charge of robbery. On March 26, 1985, appellant was sentenced to a term of five to fifteen years at the Chillicothe Correctional Institute.

On August 20, 1985, appellant filed a motion for permission to file a delayed appeal, which motion was granted.

The transcript reveals that on January 14, 1985, appellant, with his counsel, appeared before the judge for the purpose of entering a guilty plea to the charge of robbery. At that time, before accepting the guilty plea, the court conducted a hearing pursuant to Crim. R. 11 to inform the appellant of the nature of the charge, the maximum penalty involved and his constitutional rights. The matter of the appellant's parole status was also discussed. The following exchange occurred:

"THE COURT: It is my understanding you are currently on parole for some other offense.

"MR. FLINT: Yes.

"THE COURT: Are you on paper for anything else besides the parole for this other offense?

"MR. FLINT: No.

"THE COURT: By entering your plea of guilty technically what that means is the Parole Board can *take you off parole* and *you can be sent back to the institution for the initial sentence that was given to you,* do you understand that?

"MR. FLINT: Yes." (Emphasis added.)

The appellant informed the court that he understood and would waive his constitutional rights. After a full explanation of his constitutional rights pursuant to Crim. R. 11, appellant voluntarily entered a plea of guilty. The court accepted the plea and appellant was referred to the probation department for a presentence investigation.

On appeal, appellant assigns one error:

"The trial court denied Maurice Flint, a parolee, his constitutional rights to a trial by jury and due process when it accepted a guilty plea without first ascertaining that the plea was made with a full understanding of its consequences and effect upon Maurice Flint as a parole violator."

I

In his assignment of error, appellant contends that the court erred in accepting the appellant's guilty plea because the record fails to demonstrate that appellant understood the effects of a guilty plea as a parole violator. This contention is without merit.

Crim. R. 11 provides for the constitutional requirements which must be met before a trial court may accept a guilty plea by the defendant. Crim. R. 11(C) provides in part:

"(C) Pleas of guilty and no contest in felony cases.

"* * *

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

The first time the Ohio Supreme Court examined Crim. R. 11(C) was in the case of *State v. Caudill* (1976), 48 Ohio St. 2d 342, 2 O.O. 3d 467, 358 N.E. 2d 601. In *Caudill,* the court examined the circumstances surrounding defendant's plea of no contest. The court held in paragraph one of its syllabus:

"In accepting a written plea of no contest to a felony charge, the trial court must adhere scrupulously to the provisions of Crim. R. 11(C)(2)."

The court in *Caudill* continued at 345-346, 2 O.O. 3d at 469-470, 358 N.E. 2d at 603:

"Clearly this provision of the rules contemplates a dialogue requiring more than a perfunctory response from the defendant. There is an addi-

tional provision of Rule 11(C)(2)(b) requiring the court to inform the defendant of the effect of his plea of no contest and to make the same determination that the defendant understands the significance of a no contest plea.

"* * *

"The provisions relating to the determination of the defendant's understanding of his plea of guilty or no contest are recited three times in Crim. R. 11(C). They are clearly intended to be scrupulously and literally heeded.

"Under the circumstances of this case, both *the nature of the offense charged* and the *apparent limited mental capacity of the 18-year-old defendant* should have underscored the importance of meticulous adherence to the provisions of Crim. R. 11(C). * * *" (Emphasis added.)

However, the *Caudill* rule of scrupulous adherence was short-lived. In *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, 5 O.O. 3d 52, 364 N.E. 2d 1163, the court modified *Caudill* in paragraph one of its syllabus:

"Where an individual is indicted on a charge of aggravated murder, with specifications thereto, and the trial court accepts a plea of guilty to the lesser included offense of murder (R.C. 2903.02) without personally advising the defendant that he is ineligible for probation, such omission does not constitute prejudicial error, and there is *substantial compliance with the provisions of Crim. R. 11.* (Paragraph one of the syllabus in *State* v. *Caudill,* 48 Ohio St. 2d 342, modified.)" (Emphasis added.)

In *Stewart, supra,* the trial court neglected to specifically inform the defendant, who was pleading guilty to murder, that he was not eligible for probation. The Supreme Court held at 93, 5 O.O. 3d at 56, 364 N.E. 2d at 1167:

"* * * [A]lthough it can validly be

argued that the trial court should adhere scrupulously to the provisions of Crim. R. 11(C)(2) (*State* v. *Caudill* [1976], 48 Ohio St. 2d 342), there must be some *showing of prejudicial effect* before a guilty plea may be vacated. See Crim. R. 52(A). This court is of the opinion that the appellant has not demonstrated that he was in any way prejudiced by the oversight of the trial court. See *Kelleher* v. *Henderson* (C.A. 2, 1976), 531 F. 2d 78, where it was held that knowledge of maximum and minimum sentences is not constitutionally required; the test is whether the plea would otherwise have been made. See, also, *Bell* v. *Estelle* (C.A. 5, 1975), 525 F. 2d 656. In the instant case, the factual circumstances · indicated a guilty plea to a lesser offense was the wiser course to follow, and *the absence of a ritualistic incantation of an admonishment which is not constitutionally guaranteed does not establish grounds for vacating the plea.*

"The trial court *substantially complied* with the requirements in Crim. R. 11, and the failure to personally advise appellant that in entering a plea of guilty to murder he would not be eligible for probation does not rise to the status of prejudicial error." (Emphasis added.)

Therefore, the idea of scrupulous adherence to the provisions of Crim. R. 11(C)(2) gave way to a substantial compliance to the rule provided no prejudicial effect occurred. In *State* v. *Carter* (1979), 60 Ohio St. 2d 34, 14 O.O. 3d 199, 396 N.E. 2d 757, the Ohio Supreme Court expanded the idea of substantial compliance by holding that in order to determine whether or not substantial compliance has occurred, a reviewing court must look to the totality of the circumstances. In *Carter, supra,* the court held at 38, 14 O.O. 3d at 201, 396 N.E. 2d at 760:

"The question before this court is whether the defendant received notice of the charges levelled against him and, if so, did he understand *the nature of those charges.* As to the latter requirement, there is *no easy or exact way* to make such a determination, *i.e., to determine what someone subjectively understands.* If the defendant receives the proper information, then we can ordinarily assume that he understands that information. In this case, we must decide whether defendant's counsel, or someone else, provided defendant with information or notice of the charges. To do so, *we look at all the particular facts and circumstances surrounding the case. Johnson* v. *Zerbst* (1938), 304 U.S. 458, 464.

"This same '*totality of the circumstances*' *test* was employed in *Henderson,* although there the majority held that, under all the circumstances, the government could not establish that the defendant was aware of the nature of the charges against him. The trial court in *Henderson* found that the ' "petitioner was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree." ' (*Henderson,* at page, 640, fn. 6.) The Supreme Court, at page 647, stated that '* * * [t]his case is unique because the trial judge found as a fact that the element of intent was not explained to respondent.' But, as the *Henderson* court also stated: '* * * even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.' " (Emphasis added.)

Finally, in *State* v. *Ballard* (1981), 66 Ohio St. 2d 473, 20 O.O. 3d 397, 423 N.E. 2d 115, the trial court had failed to specifically inform the defendant that by pleading guilty he was waiving his right to a jury trial — a constitu-

tional right as established in *Boykin* v. *Alabama* (1969), 395 U.S. 238. The Ohio Supreme Court determined that such an omission did not result in a *per se* involuntary and unintelligent guilty plea which mandated that the plea be vacated.

The court examined the split in authority as to whether the complete omission of a *Boykin* constitutional right alone is cause to nullify a guilty plea. The court held at 478, 20 O.O. 3d at 400, 423 N.E. 2d at 118-119:

"* * * We hold that a guilty plea is constitutionally infirm when the defendant is not informed *in a reasonable manner* at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf. This holding is not only mandated by our reading of *Boykin,* but also to further two important interests. See *McCarthy* v. *United States* (1969), 394 U.S. 459.

"The first interest is that of the criminal defendant. The *criminal defendant's interest is having a full understanding of what rights he waives by pleading guilty*. This interest is best protected when the trial court fully informs the defendant what those rights are.

"There is a second, broader, interest involved here. The interest of society in the finality of guilty pleas." (Emphasis added.)

The court stated that the best method of informing a defendant of his constitutional rights was by following Crim. R. 11(C). However, failure to proceed in that manner will not necessarily invalidate the plea. The Supreme Court held at 479-481, 20 O.O. 3d at 401-402, 423 N.E. 2d at 119-120:

"* * * The underlying purpose, from the defendant's perspective, of Crim. R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty.

"Accordingly, the basis of Crim. R. 11 is to assure that the defendant is informed, and thus enable the judge to determine that the defendant understands that his plea waives his constitutional right to a trial. And, within that general purpose is contained the further provision which would inform the defendant of other rights and incidents of a trial. * * *

"* * *

"Therefore, we hold that *a rote recitation of Crim. R. 11(C) is not required, and failure to use the exact language of the rule is not fatal to the plea*. Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a *manner reasonably intelligible* to that defendant. *To hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused*. This is something we are unwilling to do.

"Applying this standard to the present cause, we hold that the trial court did meaningfully inform the appellant of his right to a trial by jury. The court informed the appellant that neither judge nor jury could draw any inference if the appellant refused to testify. Immediately after that statement the trial court informed the appellant that he was entitled to a fair and impartial trial under law. In each instance, the defendant was asked if he understood. The defendant, in each instance, responded affirmatively. These statements and answers, taken together, lead us to the conclusion that the appellant was informed of his right to a trial by jury.

"Additionally, here the record shows that the trial court in every other respect carried out the mandates of Crim. R. 11(C), both as to the con-

stitutional rights contained in such rule and the non-constitutional rights. Although the trial court may not relieve itself of the requirement of Crim. R. 11(C) by exacting comments or answers by defense counsel as to the defendant's knowledge of his rights, *such a colloquy may be looked to in the totality of the matter.*" (Emphasis added.)

After reviewing the case law in Ohio pertaining to the application of Crim. R. 11(C), it is clear that the Ohio Supreme Court has modified the scrupulous adherence requirement. The court now requires substantial compliance with the rule which is based upon a review of the totality of the circumstances to determine that no prejudice has resulted to the defendant.

With the exception of one case, this court has followed the holdings of the Supreme Court. In *State* v. *Key* (Mar. 25, 1982), Cuyahoga App. No. 43836, unreported, the defendant argued that he did not fully understand the nature of the charge before entering his plea. This court held:

"The law presently is well-established that in order for a plea to be valid the requirements of Criminal Rule 11 need not be strictly complied with; rather, substantial compliance is sufficient. See *State* v. *Stewart* (1977), 51 Ohio St. 2d 86; *State* v. *Carter* (1979), 60 Ohio St. 2d 34. Within this guideline, a detailed explanation of rights is not necessary, rather, an apprisement of the 'nature of the charge' is sufficient."

In *State* v. *Hollins* (Oct. 20, 1983), Cuyahoga App. No. 46558, unreported, the appellant argued that the court failed to fully explain the possibility of consecutive sentences on several counts. This court held:

"Thus, the court clearly admonished appellant that he faced a maximum of two to five years on *each* count and appellant acknowledged that he understood the maximum penalties involved.

"Appellant was fully informed of the maximum penalties for each offense and there has been no showing of prejudicial effect. * * * We find there has been *substantial compliance* with Crim. R. 11 and that *the omission of the trial court to state that the sentences could run consecutively rather than concurrently does not provide a basis for vacating appellant's plea.* Furthermore, in *Kelleher* v. *Henderson* (2nd Cir., 1976), 531 F. 2d 78, the court held that knowledge of maximum and minimum sentences is not constitutionally required; the test is whether the plea would have otherwise been made." (Emphasis added.)

The one case from this court which is the exception and upon which appellant relies to support his argument in the case *sub judice* is *State* v. *Norman* (Sept. 19, 1985), Cuyahoga App. No. 49507, unreported. In *Norman,* the court cited to *Caudill, supra,* for support and held:

"Thus, before accepting such a plea, it is mandatory that the trial court *state in precise terms* the maximum length of incarceration, potential fine or any other form of penalty which may result.

"* * *

"The record fails to demonstrate that Norman was fully informed of the maximum penalty to which he subjected himself by his pleas of guilty. A defendant entering a plea of guilty must be informed *in full detail* of a potential consecutive imposition of sentence to be served by reason of parole or probation violation. *Caudill, supra.* " (Emphasis added.)

We now hold that the decision in *Norman* is erroneous and that the court's reliance on *Caudill* is misplaced for two reasons. First, *Caudill* had nothing to do with the issue of consecutive sentences. In fact, Crim. R. 11(C)

does not state that the defendant must be informed of consecutive sentences. Pursuant to Crim. R. 11(C)(2)(a) the court must determine whether the defendant is making a voluntary plea "with understanding of the nature of the charge and of the maximum penalty involved." The maximum penalty refers to the charge to which appellant is pleading guilty. There is no mention in the rule about consecutive sentencing.

Second, the court in *Norman* tried to reimpose the strict adherence requirement to Crim. R. 11(C) which was developed in *Caudill* but has been modified by later cases. Therefore, the decision in *Norman* is incorrect and appellant's reliance on *Norman* in the present case is misplaced.

In the case *sub judice,* contrary to the appellant's assertions, he was fully informed of both the effect of his guilty plea on his parole and then immediately informed thereafter of the maximum sentence that the trial court could impose:

"THE COURT: By entering your plea of guilty technically what that means is *the Parole Board* can take you off parole and *you can be sent back to the institution for the initial sentence that was given to you,* do you understand that?

"MR. FLINT: Yes.

"THE COURT: Has anyone threatened you in any way, shape or form in order to get you to enter this plea of guilty?

"MR. FLINT: No.

"THE COURT: In other words, you understand the possible sentence, *I can sentence you up to three, four, five, six, seven, eight to 15 years, I can sentence you* the minimum period of time of actual incarceration and *I could also fine you, I can do a combination of both;* do you understand that?

"MR FLINT: Yes, sir." (Emphasis added.)

Therefore, after examining the record to review the totality of the circumstances, we find that the trial court substantially complied with the mandates of Crim. R. 11(C) and that appellant has not been prejudiced in any way. The court clearly differentiated and informed the appellant of the actions that it could take and the actions that the parole board could take. Pursuant to R.C. 2967.15, the finding of a parole violation is within the jurisdiction of the Adult Parole Authority. It is the Parole Authority which sets the terms and conditions of the parole. It is also the Parole Authority which determines whether or not the parolee should be declared a violator of the terms and conditions of his parole. R.C. 2967.15. Therefore, although the trial court can inform the appellant of the possible sentences it can impose for the present crime, it cannot determine the actual effect the guilty plea will have on the appellant's parole status. The trial court has no jurisdiction or sentencing power over the appellant's parole status.

Appellant argues that there is no discussion of the required consecutive sentence as mandated by R.C. 2929.41(B)(3).[1] However, pursuant to *Hollins, supra,* the court's omission does not provide a basis for vacating appellant's plea. See, also, *Stewart, supra.* Furthermore, the Parole Authority has not yet determined whether or not appellant was a parole violator. Therefore, a review of the record illustrates that the appellant was in-

---

[1] R.C. 2929.41(B)(3) provides:

"A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:

"* * *

"(3) When it is imposed for a new felony committed by a probationer, parolee, or escapee."

formed of the maximum possible sentences.

Accordingly, appellant's assignment of error is without merit.

*Judgment affirmed.*

PARRINO, C.J., and KRUPANSKY, J., concur.