This is an appeal from guilty pleas entered before Judge Brian J. Corrigan. Isaiah Davis claims his 1997 guilty pleas were not voluntarily, knowingly or intelligently made because the judge failed to comport with the requirements of Crim.R. 11 and the U.S. and Ohio Constitutions. We disagree and affirm the judgment.
Davis, then 16 years old, and his cousin, Ivan Lampkin, were charged with the kidnapping, rape and aggravated robbery of three women, all occurring on October 13, 1996. After a hearing in the juvenile division of the common pleas court, Davis was bound over to the general division on December 27, 1996. On February 4, 1997, Davis and Lampkin were charged in a twenty-five count indictment[1] with three counts of aggravated robbery, twelve counts of rape,[2] three counts of felonious assault, three counts of kidnapping, one count of carrying a concealed weapon, one count of possession of a weapon while under a disability, and one count of tampering with evidence. All of the counts charged firearm specifications pursuant to R.C. 2941.145, calling for additional penalties upon conviction of the underlying offense.
On October 2, 1997, Davis, then 17 years old, entered guilty pleas on nine counts; three counts each of aggravated robbery, rape, and felonious assault. He also pleaded guilty to the firearm specifications attached to each count. On January 9, 1998, he was sentenced to three consecutive mandatory prison terms of three years each for each firearm specification. To this nine-year sentence, the judge added terms of three years for each count of aggravated robbery, three years for each count of felonious assault, and five years for each count of rape, all to be served concurrently after Davis served the nine year term. Because the rape convictions carried mandatory prison terms, Davis' fourteen-year sentence was a mandatory prison term; he was not eligible for probation.
On March 2, 1999, Davis filed a Motion For Leave to File a Delayed Appeal, which this court granted. He asserts four assignments of error:
 I. THE TRIAL COURT ERRED BY FAILING TO INFORM, DEFENDANT HE WAS INELIGIBLE FOR PROBATION THUS DESTROYING HIS ABILITY TO MAKE A VOLUNTARY, KNOWING AND INTELLIGENT CHOICE IN VIOLATION OF CRIM.R. 11.
 II. THE PROCEEDINGS BELOW WERE DEFECTIVE IN THAT NO INQUIRY WAS MADE REGARDING WHETHER, DEFENDANT UNDERSTOOD THE NATURE OF THE CRIME AND CONSEQUENTLY THE COURT ERRED IN ACCEPTING A PLEA WHICH WAS NEITHER KNOWINGLY, WILLINGLY, NOR INTELLIGENTLY MADE IN VIOLATION OF CRIM.R. 11 AND, DEFENDANT'S CONSTITUTIONAL RIGHTS.
 III. THE COURT ERRED BY FAILING TO INFORM, DEFENDANT OF HIS RIGHT TO REQUEST CONDITIONAL PROBATION.
 IV. THE TRIAL COURT ERRED BY FAILING SEPARATELY TO ACCEPT A PLEA FOR EACH GUN SPECIFICATION.
This case presents a question concerning our standard of review when a, defendant appeals his guilty plea. To be constitutionally valid, a plea must be knowing and voluntary and to ensure validity, a judge is required to comply with Crim.R. 11 before accepting it. State v. Engle (1996),74 Ohio St.3d 525, 527, 660 N.E.2d 450, 451-52; State v. Flint (1986),36 Ohio App.3d 4, 5, 520 N.E.2d 580, 582. To satisfy constitutional duties to ensure the plea is voluntary, the judge must inform the, defendant that his guilty plea waives specific constitutional rights; these include the right to a jury trial, the right to confront witnesses, the right against self-incrimination, and the right to compulsory process of witnesses. Boykin v. Alabama (1969), 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274; State v. Ballard (1981), 66 Ohio St.2d 473, 423 N.E.2d 115, paragraph one of the syllabus. Any further requirements under Crim.R. 11(C) are required by the rule only, and not by the constitution. For example, although required to do so by Crim.R. 11(C)(2), the judge is not constitutionally required to inform the, defendant that he can be convicted only by proof beyond a reasonable doubt. State v. Scott (1996),113 Ohio App.3d 401, 680 N.E.2d 1297. This is so because neither Boykin
nor Ballard holds that the, defendant's knowledge of this right is necessary to ensure his constitutional right to a knowing and voluntary plea, despite the fact that the right to be convicted only upon sufficient proof is itself a constitutional right. In re Winship (1970),397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. A, defendant need not be informed of every constitutional right he possesses in order to enter a voluntary plea, even if that right appears directly related to his trial rights and the ultimate decision whether to plead guilty.
The distinction between rights guaranteed by the constitution and those enumerated only in Crim.R. 11(C) is important because this court's standard of review depends upon the nature of the right claimed. Where the judge has a constitutional duty to inform the, defendant of his rights, the record must show the, defendant was in fact so informed.Ballard, 66 Ohio St.2d at 480, 423 N.E.2d at 120; State v. Nero (1990),56 Ohio St.3d 106, 107, 564 N.E.2d 474, 476. If the record does not reveal that the, defendant was informed of those rights under Boykin andBallard, we presume the error prejudicial and vacate the conviction and sentence. Cleveland v. Wanzo (1998), 129 Ohio App.3d 664, 718 N.E.2d 982;Scott, 113 Ohio App.3d at 406-07, 680 N.E.2d at 1300.
A different standard, however, applies with respect to a judge's compliance with the remainder of Crim.R. 11(C). Davis does not claim he was not informed of his rights under Boykin and Ballard; he claims only that the judge erred in determining that he was aware of and understood the consequences of his plea. We review these aspects of Crim.R. 11(C) for substantial compliance; the ultimate question is whether the, defendant subjectively understands the consequences of the plea and the rights being waived. Nero, 56 Ohio St.3d at 108, 564 N.E.2d at 476-77; State v. Stewart(1977), 51 Ohio St.2d 86, 92-93, 364 N.E.2d 1163,1166-67. The totality of the circumstances review allows us to affirm the plea even if there is nothing in the record to prove that a, defendant was informed of his rights or that the judge made any determination that the, defendant had an adequate understanding of the consequences of his plea in compliance with Crim.R. 11(C). Scott, 113 Ohio App.3d at 407,680 N.E.2d at 1300; Flint, 36 Ohio App.3d at 7, 520 N.E.2d at 583. For example, in Flint, this court apparently approved the presumption that the defense attorney routinely explains the nature of the charges to his client. Id.
Furthermore, where the claimed error does not involve the failure to inform a, defendant of a specific constitutional right, we will not vacate the his plea unless the he shows such failure was prejudicial.Nero, 56 Ohio St.3d at 108, 564 N.E.2d at 476; Stewart,51 Ohio St.2d at 93, 364 N.E.2d at 1167. We review the record de novo to determine whether the totality of circumstances shows that Davis had the understanding necessary to enter his plea. State v. McDowell (Jan. 16, 1997), Cuyahoga App. No. 70799, unreported. This court has stated that its review of substantial compliance is based upon a review of the totality of the circumstances to determine that no prejudice has resulted to the, defendant. Flint, 36 Ohio App.3d at 9, 520 N.E.2d at 584.
Although a, defendant, challenging his guilty plea on appeal, might rarely be able to show prejudice from the record of his plea proceedings, the prejudice requirement might be justified as consistent with the purpose of allowing him to directly appeal his guilty plea. Ordinarily, a, defendant who wishes to challenge his guilty plea does so through a motion to withdraw the plea pursuant to Crim.R. 32.1, or through a petition for postconviction relief. Direct appeal of such a plea is limited to correction of plain errors affecting substantial rights, particularly claimed denials of constitutional rights. State v. Johnson
(1988), 40 Ohio St.3d 130, 132, 532 N.E.2d 1295, 1297. Despite the fact that a knowing and voluntary plea is constitutionally required, the, defendant who challenges his plea must show the violation of that right, and resulting prejudice.
Because of the Flint presumption that the defense lawyer has explained the charges to a, defendant, one's chances for success on direct appeal are reduced. This presumption may in fact be more burdensome than the prejudice requirement. It permits a judge to avoid any responsibility for informing a, defendant about the charges against him, and might even permit a judge to not ask a, defendant if his lawyer has discussed the charges with him. Under Flint, substantial compliance arguably allows the trial judge and a reviewing court to presume a, defendant's understanding by presuming that his lawyer has filled the information gap betweenBoykin and a knowing and voluntary plea. Indeed, a, defendant fares no better in a subsequent postconviction proceeding, because the presumption of attorney competence raises the same obstacle. It appears, therefore, that a judge has no real duty under Crim.R. 11(C) to determine whether a, defendant understands his plea, as he may rely on the, defendant's lawyer to have done so.
Even though the decisions of this court can be interpreted to presume the voluntariness of a plea (and the absence of prejudice in the unlikely event the presumption is rebutted) when a, defendant has been informed of his rights under Boykin and Ballard, it has been our practice to require the record to provide at least some indication that a, defendant understood the charges against him and the consequences of his plea. Crim.R. 11(C) places the burden of positive conduct upon the judge; he must take affirmative steps to determine that a, defendant's plea is knowing and voluntary. This task is accomplished through an oral dialogue between the judge and the, defendant which enables the judge to fully determine the, defendant's understanding of the consequences of his plea of guilty or no contest. Engle, 74 Ohio St.3d at 527, 660 N.E.2d at 452
(quoting State v. Caudill (1976), 48 Ohio St.2d 342, 358 N.E.2d 601). Although Caudill's doctrine of scrupulous adherence to Crim.R. 11(C) was subsequently modified to the substantial compliance doctrine of Stewart,
the requirement of a meaningful oral dialogue to determine the, defendant's understanding has survived. Just as the judge is not bound to a rote recitation of Crim.R. 11(C) to satisfy his duties in accepting a plea, he should not rely on compliance with rote to achieve a valid determination. Ballard, 66 Ohio St.2d 473, 480, 423 N.E.2d 115, 120, In either case, the result would improperly elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused. Id.
The oral dialogue between the trial court and the, defendant remains the primary record of the judge's determination, although other parts of the record can be used to support the totality of the circumstances, including the representations of counsel at the hearing, Ballard,66 Ohio St.2d at 481, 423 N.E.2d at 120; the, defendant's signing of forms indicating knowledge and waiver, Stewart, 51 Ohio St.2d at 91,364 N.E.2d at 1166; and evidence that the, defendant conferred with his attorney for a substantial amount of time prior to entering his plea, State v.Calvillo (1991), 76 Ohio App.3d 714, 720, 603 N.E.2d 325, 328-29. The judge's oral dialogue with the, defendant, supplemented by other portions of the record, must disclose at least some basis for determining that the guilty plea was knowing and voluntary.
Davis contends the judge erred by failing to inform him specifically or otherwise determine that he understood that his guilty plea would render him ineligible for probation because the rape offenses and firearm specifications carried mandatory prison sentences. R.C. 2929.13(F)(2), (7). Crim.R. 11(C)(2)(a) requires the judge to determine that the, defendant understands, if applicable, that the, defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
Although the judge must specifically determine whether a, defendant understands that he is not eligible for probation, the rule does not require him to personally inform a, defendant of this fact in every circumstance. Crim.R. 11(C)(2) distinguishes between things the judge must determine from those of which he must inform a, defendant regardless of whether an independent understanding is shown.
The staff notes accompanying the 1998 amendments to Crim.R. 11 indicate a belief that the language of subsection (C)(2)(a) already required a judge to advise a, defendant of mandatory minimum prison sentences and ineligibility for probation. However, the difference between the language of that subsection and those of Crim.R. 11(C)(2)(b) and (c) appears plain; the latter two subsections expressly require a judge to inform a, defendant of the plea's effects, while the former does not. If the drafters of Crim.R. 11 intended a different result, such should be reflected in the rule itself rather than in the staff notes. For over twenty years the courts of this state have held that the current language of Crim.R. 11(C)(2)(a) did not require a judge to inform a, defendant of ineligibility for probation, but instead allowed a judge to determine this understanding from the circumstances.
The record below reveals that Davis' plea was the product of negotiations, and both the prosecutor and Davis' lawyer referred to mandatory sentences when discussing the plea agreement before the court. They summarized the plea agreement as follows:
 MR. GLAZE: Your Honor, to summarize it, I believe that it was three counts of aggravated robbery with a firearm specification, three counts of rape with a firearm specification, and three counts of felonious assault with a firearm specification, making that, I believe, nine years of mandatory time just on the firearm specifications.
Is that correct?
 MR. DELBALSO: Actually, he pled guilty on all three firearm specifications in each category, so that would be three, six, nine, but we are under the assumption he's going to be sentenced for only one three-year specification per crime. So if you ran those consecutively, that would arrive at nine years mandatory.
Is that correct?
 MR. GLAZE: That's correct. That's my understanding. That's what I wanted to confirm.
The record, therefore, indicates that Davis' lawyer was fully aware of the mandatory prison sentences attached to Davis' plea and the fact that these were discussed on the record as part of the negotiations also suggests that the mandatory terms were discussed with Davis. The judge could properly determine from the circumstances that Davis understood he was not eligible for probation. Davis and his attorney negotiated a plea agreement with the state regarding a twenty-four count indictment; Davis ultimately pled guilty to nine of those counts. In his sentencing memorandum, Davis' lawyer referred to sentencing negotiations between the prosecution, the defense, and the court and noted that while a fifteen-year sentence was likely, he requested it be reduced to twelve years, further indicating that all parties had discussed the sentencing in detail. It is appropriate under these circumstances to assume, in the absence of evidence to the contrary, that Davis was included in these discussions, and thus that his ineligibility for probation was discussed. The judge was justified in believing that Mr. Glaze did inform Davis of the charges and the mandatory nature of the penalties throughout his representation, and throughout negotiations for the plea agreement.
We make this conclusion from the evidence that Davis discussed his plea and its consequences with his lawyer and not simply because the word mandatory appears many times in Davis' plea transcript. Without a lawyer's advice, it is not clear that Davis would understand that the word mandatory meant that he would not be eligible for probation. Although Davis did not question the frequent use of the word mandatory during the plea proceeding, the significant evidence of a negotiated plea allows the inference that his lawyer had in fact discussed the plea and its effects with Davis prior to Davis' entering it, thus further indicating that Davis was aware of his ineligibility for probation. Therefore, we find that the judge reasonably could have determined that Davis was aware of his ineligibility for probation.[3]
Davis' first assignment of error is overruled.
Related to his first claim, Davis asserts in his third assignment of error that he should have been informed that he had the right to apply for conditional probation for treatment and rehabilitation for drug dependency pursuant to R.C. 2951.04(A). We do not agree. That statute was repealed effective July 1, 1996. Davis pled guilty to offenses committed on October 13, 1996. Therefore he had no right to request conditional probation under R.C. 2951.04(A). Furthermore, even if Davis had requested (or claimed a right to be notified of his right to request) treatment in lieu of conviction pursuant to R.C. 2951.041(A) as an alternative, the judge would have been justified in refusing the request (or failing to notify the, defendant of the right to make the request). Such treatment is available only to those otherwise eligible for probation or community control sanctions, and Davis was not eligible for either. Crim.R. 11 does not require a judge to advise a, defendant of a right he did not have.Stewart, 51 Ohio St.2d at 93, 364 N.E.2d at 1167; State v. Riley (1993),87 Ohio App.3d 420, 423, 622 N.E.2d 421, 423.
Davis' third assignment of error is overruled.
In his second assignment of error it is claimed the judge failed to determine that Davis understood the nature of the charges against him, and claims in his fourth assignment of error that the judge failed to elicit and accept guilty pleas for each firearm specification separate and apart from the guilty pleas for the underlying charges. We address these as related assignments of error, because the failure to take Davis' pleas separately would be meaningful if he did not understand the nature of the charges. If, however, Davis understood the charges against him, then the failure to take separate pleas would not cause further confusion.
The record reflects that the judge advised Davis of all his rights under Crim.R. 11(C)(2)(c) and named the maximum sentences for each offense, but did not ask any individualized questions concerning his plea, the plea negotiations, or his discussions with his attorney. Once Davis agreed that he was satisfied with his lawyer's representation, he was not asked any other questions. The record supports the fact that the judge determined that Davis' lawyer understood the charges against his client,[4] but there is no evidence in the record that he actually conveyed that understanding to Davis.
The above-quoted portion of the transcript also shows that the prosecutor presented Davis' plea to nine firearm specifications as having the potential of a twenty-seven year sentence. One could infer from the transcript that the agreement to impose a nine year mandatory sentence instead of twenty-seven years was presented as some sort of concession by the State rather than as an application of the law. It is unclear whether Davis understood that nine years was the maximum penalty for all the firearm specifications, as he could not be sentenced more than once for firearm specifications involving the same act or transaction. R.C.2929.14(D)(1)(a)(i). In this case it is at least apparent that Davis could not be sentenced for more than one firearm specification for offenses involving the same victim.
In light of this confusion, Davis contends in his fourth assignment of error that the judge failed to elicit and accept guilty pleas for each firearm specification separate and apart from the guilty pleas for the underlying charges. This assignment of error raises the same nature of the charge issue as the second; the purpose behind requiring separate pleas is to ensure that Davis understood that each firearm specification contained elements separate from the underlying charges, and that he could plead guilty to the underlying charge without pleading guilty to the firearm specification.
Davis correctly states that a separate charge, plea, and conviction for the firearm specification is required under R.C. 2929.14(D)(1)(a)(i), just as it was under former R.C. 2929.71. State v. Tyson (1984),19 Ohio App.3d 90, 94, 482 N.E.2d 1327, 1330-31. The Tyson requirement of separate pleas, however, is subject to substantial compliance review.State v. Richard (Oct. 28, 1999), Cuyahoga App. No. 74815, unreported;State v. Harris (Dec. 6, 1990), Cuyahoga App. No. 59541, unreported.
The record shows that each count of the indictment separately stated the firearm specifications, and the judge informed Davis that each count on which he was to enter a plea contained a firearm specification that would add three years to his sentence. Although the judge then asked Davis to plead guilty to each count of the offense, rather than asking him to plead separately to each charge stated within the counts, Davis cannot rebut the circumstances indicating a lack of prejudice. We agree the record does not affirmatively show that Davis understood the nature of the charges, but the attendant circumstances allow an inference that he was informed by his lawyer, and that he could understand the judge's abbreviated plea proceedings based on that information. Davis has failed to show why this court cannot properly make any of these inferences and, therefore, is unable to show prejudice on the record. Any claim that Davis lacked understanding must be supported by evidence outside the record, and would then be a subject for postconviction relief.
The judgment is affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ ANNE L. KILBANE, JUDGE
LEO M. SPELLACY, P.J., AND KENNETH A. ROCCO, J., CONCURRING IN JUDGMENT ONLY.(CONCURRING OPINIONS ATTACHED).
[1] One of the counts was directed toward Lampkin only, leaving twenty-four counts charged against Davis.
[2] Davis and Lampkin were charged with four counts of rape with respect to the first victim, five counts with respect to the second victim, and three counts with respect to the third.
[3] There is some evidence that the judge made no such determination, as the record indicates he told Davis that the presumption is that prison time is the appropriate punishment. If the judge had not yet determined Davis' eligibility for probation, he could hardly have made an actual determination that Davis understood he was ineligible for probation.
[4] Even this is not completely clear, owing to the somewhat confused statements concerning the multiple firearm specifications.